954 F.2d 141
 CARTERET SAVINGS BANK, FA, Appellant,
v.
Louis J. SHUSHAN; Donald A. Meyer; Rader Jackson;
Jacqueline McPherson; Mitchell W. Herzog; and
Shushan, Meyer, Jackson, McPherson and Herzog.
 No. 91-5376.
 United States Court of Appeals,
Third Circuit.
 Argued Oct. 8, 1991.
Decided Jan. 13, 1992.
Rehearing Denied Feb. 12, 1992.
 
 Anthony J. Sylvester (argued) (Gerald A. Liloia, of counsel), Riker, Danzig, Scherer, Hyland & Perretti, Morristown, N.J., for appellant.
 Francis X. Crahay (argued), Joseph K. Cobuzio, Tompkins, McGuire & Wachenfeld, Newark, N.J., for appellees.
 Before MANSMANN, NYGAARD and GARTH, Circuit Judges.
 OPINION OF THE COURT
 MANSMANN, Circuit Judge.
 
 
 1
 In this appeal, we are asked to determine whether the New Jersey long-arm statute confers personal jurisdiction in New Jersey over Louisiana attorneys who acted as local counsel for the plaintiff in a Louisiana real estate transaction by virtue of the fact that the plaintiff avers that the defendants committed a fraud in New Jersey. Because the New Jersey statute is coextensive with federal due process, and exercising personal jurisdiction over one who acts tortiously while within the forum state does not deny due process, we find that the district court erred in dismissing this action. Thus we will vacate the order of the district court and remand this matter for reinstatement of the Amended Complaint.
 
 I.
 
 2
 This dispute centers on the legal representation by Louisiana residents Louis Shushan and the law firm of Shushan, Meyer, Jackson, McPherson and Herzog as local counsel to the plaintiff in a 1985 real estate transaction concerning a Louisiana construction project. Because the district court granted a motion to dismiss, we state the facts as set forth in the plaintiff's Amended Complaint. Cf. Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir.1988).[1]
 
 
 3
 The plaintiff, Carteret Savings Bank, FA, which is a Federal Association with its principal place of business in New Jersey, Am.Compl. at p 1, entered into a loan agreement with Three Lakeway for the construction of a multi-use project in Metairie, Louisiana. Am.Compl. at p 6. As partial security on this loan, Three Lakeway assigned its rights and interests to Carteret under a "Collateral Assignment." Am.Compl. at p 7. Algernon Blair was selected as the general contractor for this project. After construction had commenced, Three Lakeway filed for bankruptcy and ultimately Carteret was held liable to Algernon Blair, by a federal court in Louisiana, for a sum in excess of $1.4 million for work completed prior to Three Lakeway's bankruptcy filing.[2]
 
 
 4
 In that Louisiana litigation, the court held Carteret liable to Algernon Blair under the terms of the "Contractor's Consent and Certification," 892 F.2d at 432, which was prepared by the defendants and executed by Carteret and Algernon Blair during the Three Lakeway closing in June of 1985. This agreement stated in relevant part:
 
 
 5
 ... in the event of any default by [Three Lakeway] under the Loan Agreement, [Carteret] agrees that [Algernon Blair] shall be paid for the work done by it up to the date of such default and termination of the construction contract by [Carteret]....
 
 
 6
 Am.Compl. at p 16.
 
 
 7
 It was during the pendency of the Louisiana litigation, on December 5, 1988, that Carteret sued its Louisiana lawyers in the United States District Court for the District of New Jersey, alleging that Shushan and its law firm had "breached their fiduciary duty to Carteret," in several particulars.[3]
 
 
 8
 At the heart of its various causes of action, Carteret averred that Louis J. Shushan, Esq., failed to divulge several significant facts during a meeting in May of 1985 that took place in Roseland, New Jersey, for the purpose of reviewing the closing documents of the Three Lakeway project. Carteret alleged that, at the Roseland meeting, Shushan failed to inform Carteret officers of his prior and existing representation of Algernon Blair, his unauthorized addition of the term implicating Carteret in the Contractor's Consent, and the legal effect of that unauthorized modification. Am.Compl. at pp 12, 20. It was shortly after the Roseland meeting that the closing for the Three Lakeway project took place in June of 1985 in New Orleans.
 
 
 9
 After the defendants moved to dismiss the complaint for lack of personal jurisdiction, Carteret sought leave to file an Amended Complaint to add an intentional tort claim.[4] It also opposed the motion to dismiss for lack of personal jurisdiction. On May 22, 1989, at oral argument on the motion to amend the complaint, the district court suggested that the defendants move for a transfer order, which they did in June of 1989.
 
 
 10
 After oral argument on the motion to transfer, the district court ruled that it lacked personal jurisdiction over the defendants. App. at 135-37. Rather than granting the defendant's motion for a transfer under 28 U.S.C. § 1404(a), the district court ordered a transfer of venue under 28 U.S.C. § 1406(a). App. at 139. The district court denied Carteret's motion for reconsideration and did not act upon Carteret's motion to certify the case for appeal. Carteret Sav. Bank, F.A. v. Shushan, 721 F.Supp. 705 (1989). The district court reasoned that Carteret could not demonstrate that the defendants had sufficient contacts with New Jersey for purposes of general jurisdiction, nor could Carteret make a showing of specific jurisdiction arising out of the loan transaction. 721 F.Supp. at 708. The district court also rejected, as "factually incorrect", Carteret's assertion of an intentional tort at the Roseland meeting. Reasoning that it could order transfer in the interests of justice, the district court transferred the case over Carteret's objections. App. at 137.
 
 
 11
 We consolidated Carteret's subsequent appeal from the transfer order and its petition for a writ of mandamus. In Carteret Savings Bank, FA v. Shushan, 919 F.2d 225 (3d Cir.1990) ("Carteret I "), we dismissed the appeal for lack of appellate jurisdiction but granted partial relief on the mandamus petition, determining that a transfer of venue under section 1406(a) could not be invoked over the objection of the plaintiff. 919 F.2d at 232. We declined, however, to "reverse" the order of the district court on the personal jurisdiction issue, 919 F.2d at 233, and deleted only the transfer order to leave undisturbed the portion of the district court's order concerning personal jurisdiction. Id. In so doing, we stated:
 
 
 12
 We can only conceive of two courses which the case can then take in the district court. The court may dismiss the case because it has determined that it does not have in personam jurisdiction over Shushan in which event Carteret will have an adequate remedy to challenge the jurisdictional ruling by appealing from the final judgment. Alternatively, it is possible that the district court might grant Shushan's motion to transfer venue under section 1404(a) for the convenience of the parties as it has never been ruled on and thus is still pending.
 
 
 13
 Id. at 233.
 
 
 14
 Pursuant to the writ of mandamus on remand, in a letter opinion filed on May 2, 1991, the district court vacated the section 1406(a) transfer order, denied Shushan's outstanding motion for transfer under section 1404(a), and granted leave for Carteret to amend its complaint nunc pro tunc. App. at 609, 614, 612. Most importantly for this appeal, the district court denied Carteret's renewed request to reconsider its holding on personal jurisdiction and dismissed the Amended Complaint for lack of personal jurisdiction.[5]
 
 
 15
 We exercise appellate jurisdiction over the district court's final order, pursuant to 28 U.S.C. § 1291. "To the extent that the district court's conclusion relies upon the selection and application of legal precedent, our review is plenary." North Penn Gas Co. v. Corning Natural Gas Corp., 897 F.2d 687, 688 (3d Cir.) (per curiam ), cert. denied, --- U.S. ----, 111 S.Ct. 133, 112 L.Ed.2d 101 (1990).
 
 II.
 
 16
 "A federal court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of the state." Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n, 819 F.2d 434, 436 (3d Cir.1987). The New Jersey long-arm rule extends to the limits of the Fourteenth Amendment Due Process protection. New Jersey Court Rule 4:4-4(c); Charles Gendler & Co., Inc. v. Telecom Equip. Corp., 102 N.J. 460, 469, 508 A.2d 1127, 1131 (1986); Avdel Corp. v. Mecure, 58 N.J. 264, 268, 277 A.2d 207, 209 (1971); DeJames v. Magnificence Carriers, Inc., 654 F.2d 280, 284 (3d Cir.), cert. denied, 454 U.S. 1085, 102 S.Ct. 642, 70 L.Ed.2d 620 (1981). We are constrained, under New Jersey's long-arm rule, only by the "traditional notions of fair play and substantial justice," inhering in the Due Process Clause of the Constitution. See International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).[6]
 
 A.
 
 17
 In its Amended Complaint, Carteret alleged an additional count of wrongful, intentional misrepresentation (Count Two):
 
 
 18
 p 20. Shushan and the Shushan Firm acted wrongfully at the May 29, 1985 New Jersey meeting and at all other relevant times during the course of its representation of Carteret, in the following non-exclusive respects:
 
 
 19
 (a) by deliberately failing to disclose to Carteret and others present that they had amended the Contractor's Consent to the benefit of Algernon Blair and to the detriment of Carteret;
 
 
 20
 (b) by deliberately failing to secure Carteret's consent to the amendment;
 
 
 21
 (c) by intentionally failing to inform and advise Carteret of the purpose and legal consequences of the unauthorized amendment to the Contractor's Consent;
 
 
 22
 (d) by concealing from Carteret their prior communications with Algernon Blair concerning the Contractor's Consent;
 
 
 23
 (e) by intentionally failing to disclose their long-standing professional and personal relationship with Algernon Blair; and
 
 
 24
 (f) by taking deliberate actions to benefit their long-standing client, Algernon Blair, to the significant detriment of Carteret.
 
 
 25
 p 21. Shushan and the Shushan Firm knew that Carteret relied on them to represent its interests and that Carteret could incur substantial liability as a result of Shushan's failure to disclose the unauthorized amendment of the Contractor's Consent and the legal effect thereof and his long-term attorney-client relationship with Algernon Blair.
 
 
 26
 p 22. Carteret has been substantially harmed, as set forth in paragraph 16 hereof, as a result of the wrongful, deliberate conduct of Shushan and the Shushan Firm and its reliance on the misrepresentations and intentional non-disclosures by defendants.
 
 
 27
 We will examine the issue of personal jurisdiction first in the context of this claim of "wrongful, deliberate ... misrepresentations and intentional non-disclosures" by the defendants. For the sake of clarity, we must at the outset articulate the precise contours of the allegations that control our jurisdictional inquiry. Since we examined this case in Carteret I, the facts relevant to a determination of personal jurisdiction have changed significantly. In its original Complaint Carteret averred only a breach of fiduciary duty (Count One). In Count Two of its Amended Complaint, Carteret now alleges that during the time when Shushan was physically present in Roseland, New Jersey to review the closing documents for the Three Lakeway project with Carteret, he deliberately and intentionally failed to advise Carteret of Shushan's relationship with Algernon Blair, the fact that Shushan had modified the Contractor's Consent by inserting the guarantee, and the legal import of that language. Am.Compl. at p 20. By way of affidavit, Carteret's Vice President Steven Cole asserted "without hesitation that Carteret would not have agreed to the Contractor's Consent Agreement in the form executed if Shushan had informed Carteret [of the pertinent facts]." App. at 37.
 
 
 28
 On the face of its Amended Complaint, therefore, Carteret avers that Shushan committed a fraudulent misrepresentation in New Jersey at the Roseland meeting to formally review the closing documents prior to the Three Lakeway closing. The district court characterized "Carteret['s] assert[ion] that Shushan committed an intentional tort in New Jersey during the meeting on May 29, 1985" as "factually incorrect," adding:
 
 
 29
 The closing documents were prepared in Louisiana and it is therefore in Louisiana, if anywhere, that Shushan planned and committed his negligent or tortious acts. Shushan's alleged fraud was a paper fraud, hatched and executed in Louisiana.[1]
 
 
 30
 721 F.Supp. at 708.
 
 
 31
 Carteret contends that the district court erred by not accepting the factual allegations on the face of its Amended Complaint in the light most favorable to Carteret. We note that once the defendant raises the question of personal jurisdiction, the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction. Time Share Vacation v. Atlantic Resorts, Ltd., 735 F.2d 61, 65 (3d Cir.1984). See Provident Nat. Bank v. California Fed. Sav. & Loan Ass'n, 819 F.2d 434 (3d Cir.1987) (citing Gehling v. St. George's School of Medicine, Ltd., 773 F.2d 539, 542 (3d Cir.1985), for the proposition that "the plaintiff bears the burden of establishing with reasonable particularity sufficient contacts between the defendant and the forum state to support jurisdiction").
 
 
 32
 The defendants do not controvert the existence of Shushan's contacts with New Jersey, namely the Roseland meeting and numerous telephone calls and correspondence; rather, the defendants refute Carteret's substantive allegations with respect to those contacts. Thus, we are not presented with a case where we must accord a clearly erroneous standard of review to the factfinding of the district court, because this factfinding is not necessary to resolve the issue of personal jurisdiction.
 
 
 33
 As the district court noted in footnote 1, Carteret alleges that the content of the Contractor's Consent and Certification was not even discussed at the Roseland meeting prior to the closing. This is precisely the crux of Carteret's fraudulent misrepresentation claim: Carteret relied upon the professional judgment of Shushan and his law firm to represent it with respect to the closing. Carteret also relied on Shushan to apprise Carteret of unfavorable contract language and Shushan's alleged failure to do so, when combined with the possibility of a motivating conflict of interest, allegedly created Carteret's liability which resulted in a judgment in excess of $1.4 million. Carteret's averments that Shushan traveled to New Jersey to confer with and to advise his client prior to the Three Lakeway closing and that during that meeting he deliberately failed to explicate matters which would materially affect Carteret's interests constitute an allegation that Shushan committed an intentional tort of misrepresentation or fraud.
 
 
 34
 Personal jurisdiction may be exercised over a non-resident defendant who, while present in the forum state, makes a deliberate misrepresentation during the course of negotiations or other direct oral communications with the plaintiff. See, e.g., Robert C. Casad, Jurisdiction in Civil Actions § 7.06 (2d ed. 1991) (citing cases). In Gehling v. St. George's School of Medicine, Ltd., 773 F.2d 539 (3d Cir.1985), we had occasion to address whether an allegedly tortious act committed within the forum state would suffice for personal jurisdiction. There we held that personal jurisdiction could be exercised over a foreign citizen who traveled to Pennsylvania where he fraudulently misrepresented the cause of death of the plaintiff's decedent, an act which gave rise to a claim for intentional infliction of emotional distress:
 
 
 35
 Having traveled to Pennsylvania to return decedent's body, appellees clearly availed themselves of the "privilege of acting within" Pennsylvania. Furthermore, with respect to this claim the appellees could reasonably have anticipated being haled into court in Pennsylvania to answer for their alleged injurious misrepresentation. Finally, the cause of action arises from defendant's in-state activities, and the defendant's misrepresentation, which occurred and caused injury in Pennsylvania to Pennsylvania residents, has a sufficient connection to meet the fair play and substantial justice standard of International Shoe.
 
 
 36
 Id. at 544.
 
 
 37
 The highest New Jersey court to speak directly to this issue when construing its long-arm rule has taken the same view, holding constitutional the exercise of personal jurisdiction over a nonresident defendant who committed a tortious act in New Jersey. Knight v. San Jacinto Club, Inc., 96 N.J.Super. 81, 232 A.2d 462 (1967). In that personal injury action against a nonresident defendant, the defendant's sole contact with New Jersey consisted of the single visit yielding the accident. Id. at 84, 232 A.2d at 464. After recognizing that the New Jersey long-arm rule confers personal jurisdiction bounded only by the due process constraints of International Shoe, the Appellate Division of the Superior Court defined the question as "whether the [United States Supreme Court] will uphold jurisdiction based solely on the single tort of a nonresident defendant committed in the forum state." Id. at 87-88, 232 A.2d at 466. Noting that the Court had not yet passed upon this question, an observation which remains true, the New Jersey court reasoned that "a tortious act committed within the State constitutes a jurisdictional predicate 'consistent with due process.' " Id. at 90, 232 A.2d at 467. Although a stronger jurisdictional predicate could be made for an intentional tort, the New Jersey court reasoned that an unintentional tort would be sufficient. Id. Therefore, New Jersey would permit the exercise of personal jurisdiction over a nonresident defendant who committed a single tortious act, whether negligent or intentional, within New Jersey.
 
 
 38
 The New Jersey Supreme Court has also more recently upheld the exercise of personal jurisdiction over a Florida defendant who allegedly committed fraud in the context of a boat sale to a New Jersey resident. Lebel v. Everglades Marina, Inc., 115 N.J. 317, 558 A.2d 1252 (1989). The facts reveal that Lebel attended a boat show in New Jersey during which he discussed a boat purchase with the defendant and voiced his intention to use the boat in New Jersey; ensuing negotiations resulted in approximately 20 telephone calls to New Jersey; the sales agreement was received and signed in New Jersey; the boat was delivered to Lebel in Florida and never reached New Jersey due to an accident en route. 115 N.J. at 320, 558 A.2d at 1253.
 
 
 39
 Lebel alleged fraud in the sale. Unlike here, however, the defendant's only transactional contacts with New Jersey consisted of telephone calls and the mailing of the sales agreement to New Jersey. 115 N.J. at 326; 558 A.2d at 1256 ("Remember that in this case it is alleged that the defendant's representations via mail and telephone to New Jersey were fraudulent"). Although the New Jersey court described them as "limited," it held that for purposes of specific or transactional jurisdiction, "the defendant purposefully directed his activities at the forum state." 115 N.J. at 327; 558 A.2d at 1257.
 
 
 40
 Given the holdings in Knight and Lebel, the exercise of personal jurisdiction over Shushan is consistent with New Jersey jurisprudence. Shushan's act of traveling to New Jersey, where he allegedly committed a fraud, suffices for the exercise of personal jurisdiction.
 
 
 41
 Moreover, the allegation that the defendants acted tortiously in New Jersey presents a stronger case for exercising personal jurisdiction over the defendants than the effects test employed in Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). Under the effects test, a court may exercise personal jurisdiction over a nonresident defendant who acts outside the forum state to cause an effect upon the plaintiff within the forum state. For example, in Calder, personal jurisdiction was properly exercised in California over a Florida defendant who wrote an allegedly defamatory article, published in a nationally circulated magazine, about a California resident. Although both the writing and publishing of that article occurred outside of the forum state, those acts damaged the plaintiff within the forum state. That the article might harm the plaintiff, a California resident, in her home state should be sufficiently foreseeable, such that haling the defendant into court in the forum state would not violate notions of fair play and substantial justice. Calder, 465 U.S. at 789-90, 104 S.Ct. at 1487; see also Wolpert v. North Shore University Hospital, 231 N.J.Super. 378, 555 A.2d 729 (1989) (holding that a physician "who issues a report, intending that it will be the basis for action in another state, should realize that liability can follow in the court of that state"); Johnson v. Bradbury, 233 N.J.Super. 129, 558 A.2d 61 (1989) (nonresident father's inducement to resident daughter to leave the forum state in exchange for payment of college tuition, could be found to constitute "effects" in the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice).
 
 
 42
 If allegedly tortious acts committed outside the forum state and causing effects within that state can suffice for the exercise of personal jurisdiction over a nonresident under the effects test, then clearly an allegedly tortious act committed within the forum state, which causes injury to a resident of that state, also conforms with due process. See also Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091 (1927) (a nonresident who acts negligently within the forum state causing personal injury to a resident may be haled into court in the forum state). Moreover, McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), although premised upon an insurance contract, makes clear that a nonresident corporation may be haled into the forum state's court, consistent with due process, based upon the issuance of one insurance policy to a resident, in that it "was delivered in [the forum state], the premiums were mailed from there and the insured was a resident of that state when he died." 355 U.S. at 223, 78 S.Ct. at 201.
 
 
 43
 As did the district court, the defendants have characterized the gravamen of Carteret's Amended Complaint as a "garden variety" legal malpractice action. The defendants suggest that Carteret has merely refined its pleading to attain personal jurisdiction and that Carteret's Amended Complaint is its third attempt to plead a cause of action against Shushan: first, Carteret filed a third party complaint against Shushan in the Louisiana litigation, claiming a breach of fiduciary duty, but failed to pursue that claim further; second, Carteret filed its original complaint in this action, which was substantively identical to the third party complaint; and finally, Carteret amended its Complaint to include a tort claim.
 
 
 44
 We conclude that it would be premature and unwise for us to evaluate the merits of Carteret's tort claim now. Because the facts are vigorously contested, weighing the evidence will be the duty of the factfinder. Upon its face, the Amended Complaint pleads an intentional misrepresentation of material facts. Moreover, we note that Fed.R.Civ.P. 11 should adequately deter the plaintiff and its counsel from casting a malpractice action as an intentional tort action for the sole purpose of obtaining personal jurisdiction over a nonresident defendant. See, e.g., Ford Motor Co. v. Summit Motor Prod., Inc., 930 F.2d 277, 289 (3d Cir.1991) (providing the standard to be applied to an alleged Rule 11 violation); Jones v. Pittsburgh Nat'l Corp., 899 F.2d 1350, 1357 (3d Cir.1990) (same).B.
 
 
 45
 Carteret also alleges, in Count One, that the defendants breached their fiduciary duty to Carteret in drafting the Contractor's Consent and Certification without informing Carteret of either its legal ramifications or the defendants' relationship with Algernon Blair. Count One does not locate this breach in Roseland, New Jersey; rather, it refers to the whole of the defendants' representation with respect to the Three Lakeway project. Therefore, with respect to Count One, we must determine whether Carteret has demonstrated that the defendants had sufficient minimum contacts with New Jersey. Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 63 (3d Cir.1984).
 
 
 46
 Our initial inquiry is "whether [Count One] arises from the defendant's forum related activities or from non-forum related activities." Reliance Steel Prod. Co. v. Watson, Ess, Marshall & Enggas, 675 F.2d 587, 588 (3d Cir.1982). General jurisdiction may be invoked when the claim does not "arise out of or is unrelated to the defendant's contacts with the forum." Dollar Sav. Bank v. First Security Bank of Utah, 746 F.2d 208, 211 (3d Cir.1984). Carteret concedes that the contacts required for general jurisdiction are absent here, but presses specific jurisdiction.
 
 
 47
 " '[S]pecific jurisdiction' is invoked when the claim is related to or arises out of the defendant's contacts with the forum." Dollar Sav. Bank, 746 F.2d at 211. For specific, or transactional jurisdiction, "where the defendant has no continuing presence ... the focus must be on minimum contacts." Id. at 212 (citing Paolino v. Channel Home Centers, 668 F.2d 721 (3d Cir.1981)).
 
 
 48
 We are satisfied that Carteret has established that the defendants had sufficient minimum contacts with New Jersey during the course of their representation of Carteret for the exercise of specific jurisdiction. Shushan does not dispute that throughout his representation of Carteret he telephoned and corresponded with Carteret managers in New Jersey or that he traveled to Roseland, New Jersey in May of 1985 to meet with Carteret management in preparation for the Three Lakeway closing.[7] While some minimal correspondence alone will not satisfy minimum contacts, see, e.g., Gehling, 773 F.2d at 544 (mailing one letter of acceptance to forum state); Dollar Savings Bank, 746 F.2d at 213 (in a commercial transaction executed in Utah and New York, the sole fact that the loans were disbursed and repaid by wire transfer within the forum state did not satisfy minimum contacts), the averred purpose of the Roseland meeting constituted a culminating event in the context of Shushan's representation of Carteret: there Shushan had the opportunity to advise Carteret thoroughly concerning the closing documents and to obtain Carteret's approval for the final closing documents. Cf. Provident Nat'l Bank, 819 F.2d at 438 (observing, for purposes of general jurisdiction, that the nature of the defendant's contacts with the forum state "was central to the conduct of its business").
 
 
 49
 Contrary to the defendants' assertions, Reliance Steel, 675 F.2d at 587, does not control this case. In that case, a Pennsylvania resident sued a Missouri law firm in Pennsylvania in connection with its representation in a Kansas replevin action. We held that the Missouri law firm had insufficient minimum contacts with Pennsylvania, the forum state, to warrant the exercise of either specific or general jurisdiction. That law firm's only contacts with Pennsylvania consisted of an advertisement in a national publication that is distributed in Pennsylvania, and the law firm's agreement to handle the Kansas replevin action. In Reliance Steel, the law firm did not send a representative to Pennsylvania in connection with the nonforum related legal representation. This case now before us turns, as Gehling did, upon Shushan's purposefully availing himself of the privileges of acting within New Jersey by traveling to New Jersey as well as by communicating with clients within the forum state. See Gehling, 773 F.2d at 544.
 
 
 50
 We decline to attach significance to the defendants' allegation that Shushan did not solicit Carteret. Cf. Reliance Steel, 675 F.2d at 589 (the referral upon which the plaintiff sought to ground minimum contacts was unsolicited by the nonresident law firm). Here, unlike Reliance Steel, the "purposeful availment" necessary for due process purposes, see Hansen v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958), was met by Shushan's act of traveling to New Jersey to consult with his client. We also decline to adopt the defendants' position that personal jurisdiction should turn upon whether Carteret invited Shushan to the Roseland, New Jersey meeting or Shushan himself initiated that meeting since the operative fact is that Shushan attended this meeting in New Jersey. Coupled with the telephone calls and letters to New Jersey, the attendance at the Roseland meeting suffices to establish the minimum contacts necessary for specific jurisdiction.
 
 III.
 
 51
 Once the plaintiff has made out a prima facie case in favor of personal jurisdiction, the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477, 105 S.Ct. 2174, 2185, 85 L.Ed.2d 528 (1986). In this regard, we are instructed to evaluate:
 
 
 52
 "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies."
 
 
 53
 Id. (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490). In this regard, the defendants opine that Carteret has not demonstrated that New Jersey is the more appropriate forum in which to litigate. We conclude that the defendants have not met their burden of presenting a compelling case that a New Jersey forum's exercise of personal jurisdiction would be unreasonable.
 
 
 54
 The defendants do not explain what burden, other than inconvenience, will be visited upon them should they be required to litigate in New Jersey. In contending that we ought to look to "the reasonableness of litigating this case in New Jersey," Appellees' Brief at 36, the defendants misapprehend their burden to make a compelling case against the exercise of personal jurisdiction. Neither the assertion that Carteret does business throughout the United States, nor that a number of anticipated trial witnesses were not asked whether they preferred a New Jersey forum over a Louisiana forum, satisfies the defendants' burden.
 
 
 55
 During discovery conducted pursuant to the defendants' motion to dismiss, Carteret produced affidavits and certifications from ten non-party witnesses who reside throughout the United States: six were willing to travel to New Jersey for deposition and trial, App. at 105, 108, 113, 114, 117, 121; four stated that New Jersey would be the more convenient location for them to attend depositions and trial, App. at 106, 111, 115, 123. In addition, Carteret's Vice President, Steven Cole, asserted that all of Carteret's documentation concerning the Three Lakeway project was located in New Jersey. App. at 119.
 
 
 56
 New Jersey would also have a significant interest in adjudicating fraudulent misrepresentations occurring within its boundaries. This case will not involve the "trial within a trial", requiring the application of another forum's law that proved to be the decisive factor in Washington v. Magazzu, 216 N.J.Super. 23, 552 A.2d 1013 (1987), upon which the defendants rely. In that legal malpractice action centering around local counsel's failure to commence a medical malpractice action in the nonforum state before the expiration of the nonforum's statute of limitations, the court found jurisdiction unreasonable because:Virginia [is] where almost all the key witnesses reside, where most of the vital evidence is to be found and where Virginia law and practice can more readily be applied to measure the worth, if any, of plaintiffs' underlying medical malpractice claims.
 
 
 57
 Id. at 29, 552 A.2d at 1016. By contrast, because the allegedly tortious conduct occurred in New Jersey, the district court would apply New Jersey law to Count Two.
 
 
 58
 This result is consistent with our recent decision in Mesalic v. Fiberfloat Corp., 897 F.2d 696 (3d Cir.1990), where we determined that Fiberfloat, a Florida resident, would not be unduly burdened by the expenses of litigating in New Jersey. 897 F.2d at 701. New Jersey had a valid interest in protecting its residents from damages arising out of the sale by a nonresident of a defectively manufactured product. Id. We also rejected the proposition that Florida had a more substantial interest than New Jersey, or that Fiberfloat's interest outweighed Mesalic's. Specifically, "Fiberfloat purposefully entered the State of New Jersey to carry out activities in an effort to repair Mesalic's boat. These actions are sufficient to distinguish cases where contacts were insufficient to assert personal jurisdiction." Id. at 702. Similarly, Shushan purposefully entered New Jersey in order to further his representation of Carteret with respect to the Three Lakeway closing.
 
 IV.
 
 59
 For the foregoing reasons, we will vacate the order of the district court that dismissed this action for lack of personal jurisdiction and remand for reinstatement of the Amended Complaint and further proceedings.
 
 
 
 [1]
 We are satisfied that courts reviewing a motion to dismiss a case for lack of in personam jurisdiction must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff. See In re Arthur Treacher's Franchisee Litigation, 92 F.R.D. 398, 409-10 (E.D.Pa.1981); Oxford First Corp. v. PNC Liquidating Corp., 372 F.Supp. 191, 192-93 & n. 2 (E.D.Pa.1974) ("While we have found no case exactly on point that makes such an inference ... the case law in other 12(b) motions strongly supports our position"). Other circuits have accepted this view. See, e.g., Brown v. Flowers Industries, Inc., 688 F.2d 328, 332 (5th Cir.1982); Behagen v. Amateur Basketball Ass'n of U.S.A., 744 F.2d 731, 733 (10th Cir.1984)
 New Jersey state courts have also held that a plaintiff's allegations must be taken as true for jurisdictional purposes. See, e.g., Washington v. Magazzu, 216 N.J.Super. 23, 522 A.2d 1013, 1015 (1987) ("We must accept these allegations as true and the claim as valid for the purposes of this appeal because the motion to dismiss was directed solely to the jurisdiction of the court, and not to the merits of the claim").
 Of course, by accepting a plaintiff's facts as true when a motion to dismiss is originally made, a court is not precluded from revisiting the issue if it appears that the facts alleged to support jurisdiction are in dispute. See, e.g., Marine Midland Bank v. Miller, 664 F.2d 899, 904 (2d Cir.1981) (if court does not conduct evidentiary hearing on motion to dismiss for lack of in personam jurisdiction, plaintiff need only plead prima facie case to survive the initial motion, but must eventually establish jurisdiction by a preponderance of the evidence); LaRose v. Sponco Mfg., Inc., 712 F.Supp. 455, 458-59 (D.N.J.1989) (citing Miller ).
 
 
 [2]
 Carteret's liability was established in SNS Contractors v. Algernon Blair, Inc., 892 F.2d 430 (5th Cir.1990), a case in which two of Algernon Blair's subcontractors sued Algernon Blair, which in turn impleaded Carteret. The United States District Court for the Eastern District of Louisiana ruled in favor of the subcontractors and in favor of Algernon Blair as against Carteret, awarding damages of $1,498,304. SNS Contractors v. Algernon Blair, Inc., No. 88-1372 (E.D.La.1988) (consolidated with Fishback and Moore, Inc. v. Algernon Blair, Inc., No. 88-1424 (E.D.La.1988)). The Court of Appeals for the Fifth Circuit affirmed
 
 
 [3]
 These were enumerated as follows: (1) failing to disclose their prior representation of Algernon Blair and to obtain Carteret's consent to this conflict of interest, (2) failing to advise Carteret that this conflict jeopardized their representation of Carteret, (3) failing to protect Carteret's interests during negotiations with Algernon Blair, (4) failing to disclose to Carteret the unfavorable terms of the Contractor's consent document, and (5) failing to inform Carteret of the possible adverse legal consequences of that document. App. at 4-5
 
 
 [4]
 This motion was granted nunc pro tunc on May 2, 1991, although the parties and the district court had previously proceeded as if Carteret's motion to amend the complaint had been granted. See Carteret Sav. Bank, F.A. v. Shushan, 721 F.Supp. 705, 707 (D.N.J.1989) ("Carteret then commenced this action ... alleging that Shushan fraudulently ... inserted the default provision ...") (emphasis added)
 
 
 [5]
 Quoting our language in Carteret I, see supra, the district court stated: "The Circuit did not contemplate, nor in my view, leave open the possibility that this Court would, or legally could, reconsider its jurisdictional decision.... The issue of personal jurisdiction has been decided. It is the law of the case and I will not revisit it." App. at 610 (citation omitted)
 
 
 [6]
 We recognize that while the due process standard must be applied to each defendant, Calder v. Jones, 465 U.S. 783, 790, 104 S.Ct. 1482, 1487, 79 L.Ed.2d 804 (1984); Rush v. Savchuk, 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980), this requirement poses no additional analysis here because the defendants consist of an attorney, his law partners and the law firm partnership. A partnership and each partner is held liable for the act of every other partner, executed in the usual way of carrying on the business of the partnership. See, e.g., Federal Deposit Ins. Corp. v. Braemoor Assoc., 686 F.2d 550 (7th Cir.1982), cert. denied, 461 U.S. 927, 103 S.Ct. 2086, 77 L.Ed.2d 297 (1983); Eppes v. Snowden, 656 F.Supp. 1267 (E.D.Ky.1986)
 
 
 [1]
 Moreover, it is significant to note that there is no evidence or suggestion that the allegedly fraudulent provision of the contract was specifically discussed at the meeting in New Jersey
 
 
 [7]
 The defendants' affidavits in support of their motion to dismiss for lack of personal jurisdiction relate only to the merits of Carteret's claim, i.e., refutations of any misrepresentation, and the inconvenience of litigating in a New Jersey forum