David STEELMAN III, and Sadie Ventura on their own behalf, and on behalf of their minor children, Angel Ventura, Oscar Ventura, and Aniceto Ventura, Plaintiffs,

v.

Tom CARPER, Governor of the State of Delaware; the State of Delaware; the State of Delaware Division of Family and Children's Services; Michael Langrell; Karen Wilson; Rae'l Donastrogis; Officer Timothy Stump; the City of Dover, Delaware; Officer Terry Helsel; the City of Harrington, Delaware; the City of Milford, Delaware; Gary Johnson, Governor of the State of New Mexico; the State of New Mexico; Officer Keith P. Sandy, Defendants.

No. CIV.A. 98–267–GMS.

United States District Court, D. Delaware.

Dec. 15, 2000.

David Steelman III and Sadie Ventura, pro se and on behalf of their minor children, Angel Ventura, Oscar Ventura, and Aniceto Ventura.

Stuart B. Drowos, State of Delaware Department of Justice, Wilmington DE,

Defendants Tom Carper, The State of Delaware, The State of Delaware Division of Family and Children's Services, Michael Langrell, Karen Wilson and Rae'l Donastrogis.

William J. Cattie, III, Barbara Anne Fruehauf, Cattie & Fruehauf, Wilmington, DE, for Defendants Officer Timothy Stump and The City of Dover, Delaware.

Bruce C. Herron, Sawyer, Akin & Herron, P.A., Wilmington, DE, for Defendants Officer Terry Helsel and The City of Harrington, Delaware.

David H. Williams, Morris, James, Hitchens & Williams, Wilmington, DE, for Defendant The City of Milford, Delaware.

Charlene D. Davis, Bayard Firm, Wilmington, DE, Keleher & Mcleod, P.A., Albuquerque, NM (Sean Olivas, of counsel), for Defendants Gary Johnson, The State of New Mexico, and Officer Keith P. Sandy.

### *MEMORANDUM OPINION*

SLEET, District Judge.

## I. INTRODUCTION

On May 18, 1998, plaintiffs David Steelman III and Sadie Ventura, individually and on behalf of their minor children, filed a pro se complaint claiming violations of the United States Constitution, the Delaware Constitution, and 42 U.S.C. §§ 1983, 1985(3). The complaint alleges that the defendants "have in one or more ways, unlawfully conspired to punish [plaintiffs] without due process of law, search and seize plaintiffs [sic] person, personal effects, property and papers withou[t] justification, without consent, and without aid of

1. Although the plaintiffs filed a "Supplemental Civil Rights Complaint" on July 2, 1999, it does not appear to have been docketed. The court notes that this is the second time the plaintiffs have attempted to amend the complaint without filing a motion to amend or supplement their complaint before submitting the "supplemental" complaint.

2. The defendants are divided between various individuals and municipalities in The State of New Mexico and The State of Delaware. The

a warrant. That one or more of the defendants have unlawfully imprisoned the plaintiffs, [and] kidnaped [sic] the minor children named as plaintiffs in this case." (D.I. 2 at 3). The plaintiffs filed an amended complaint on June 1, 1998 which expanded the allegations of the original complaint (D.I.12).[1]

The defendants[2] have filed the following: (1) The New Mexico Defendants' Motion to Dismiss under Fed.R.Civ.P. 12(b)(2) (D.I.38), (2) Officer Helsel and The City of Harrington's Motion to Dismiss/Motion for Summary Judgment (D.I.52), and (3) The State Defendants' Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6) (D.I.69). The plaintiffs have filed the following: (1) a Motion for Leave to File a Supplemental Complaint (D.I.45), (2) a Motion for a Temporary Restraining Order and/or a Preliminary Injunction (D.I.65), (3) a Motion to Show Cause and For Sanctions Against The State of Delaware (D.I.85) and (4) Steelman's Motion for Appointment of Counsel (D.I.21). For the reasons that follow, the court will grant the defendants' motions. To the extent required, the court will address the merits of those motions filed by the plaintiffs which are not moot. The balance of the plaintiffs' motions will be denied as moot.

## II. STANDARD OF REVIEW

Because of the different dispositive motions filed, the court must articulate several standards of review.

Under Fed.R.Civ.P. 12(b)(2), the court may grant a motion to dismiss when there is a lack of personal jurisdiction over

court will refer to The State of New Mexico, Officer Keith P. Sandy, and New Mexico Governor Gary Johnson as "The New Mexico Defendants". The court will refer to then-Delaware Governor Tom Carper, The State of Delaware, The State of Delaware Division of Family and Children's Services ("DFCS"), Michael Langrell, Karen Wilson, and Rae'l Donastrogis as "The State Defendants". The court will identify all the other defendants by name.

the defendants. In determining the presence of personal jurisdiction, the court must engage in a two step analysis. First, whether the long arm statute of the state in which the court sits authorizes jurisdiction over the defendants. Second, whether existing jurisdiction comports with the requirements of the Due Process Clause of the Fourteenth Amendment. *See, e.g., Compaq Computer Corp. v. Packard Bell Elec., Inc.*, 948 F.Supp. 338, 342 (D.Del. 1996) (citation omitted). For the plaintiffs to satisfy the second prong of this analysis, the court must find the existence of "minimum contacts" by the defendants. Specifically, the plaintiffs must show that the defendants "purposefully avail[ed] ... [themselves] of the privileges of conducting activities within [the state]." *See Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 108–09, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Unless the defendants' contacts are continuous, systematic, and substantial, they must be related to the plaintiffs' cause of action. *See Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 411, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

The court may only grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgement as a matter of law. *See* Fed.R.Civ.P. 56(e); *Todaro v. Bowman*, 872 F.2d 43, 46 (3d Cir.1989). An issue is genuine if a reasonable jury could return a verdict for the plaintiff given the evidence. *See Blizzard v. Hastings*, 886 F.Supp. 405, 408 (D.Del.1995). The nonmoving party, however, must demonstrate the existence of a material fact supplying sufficient evidence—not mere allegations—for a reasonable jury to find for the nonmovant. *See Olson v. General Elec. Astrospace*, 101

F.3d 947, 951 (3d Cir.1996) (citation omitted). To raise a genuine issue of material fact, the nonmovant "need not match, item for item, each piece of evidence proffered by the movant but simply must exceed the 'mere scintilla' [of evidence] standard." *Petruzzi's IGA Supermarkets, Inc. v. Darling–Delaware Co.*, 998 F.2d 1224, 1230 (3d Cir.1993) (internal quotations and citations omitted).

## II. DISCUSSION

### A. The Complaints

According to the complaints, the plaintiffs allege that (1) two unknown Dover police officers questioned Steelman without the benefit of Miranda warnings, searched him without a warrant or consent, unlawfully detained him for three and a half hours, and unlawfully arrested him (D.I. 2 at 3b-d), (2) Officer Stump, also a Dover police officer, denied Steelman's request for counsel and "refused for over 6(sic) hours to allow the plaintiff to speak with or have a lawyer present" (D.I. 2 at 3e), (3) Stump physically assaulted Steelman in an effort to force him to be a witness against himself (D.I. 2 at 3e), (4) Carper and Johnson conspired to violate Steelman's constitutional rights by causing him to be extradited to Delaware on an "unlawful arrest" (D.I. 2 at 36)[3] and (5) on January 18, 1998, Officer Sandy violated Steelman's rights by unlawfully searching and seizing his property, unlawfully arresting him, and using the evidence to unlawfully imprison him (D.I. 2 at 3h-I).

The complaints also claim violations of Ventura's constitutional rights. On August 27, 1997, Stump allegedly threatened Ventura and her children in order to obtain a confession from Steelman (D.I. 2 at 3e).[4] Further, Helsel and Stump allegedly

---

**3.** The plaintiffs state the evidence of this conspiracy is that Delaware extradited Steelman even though the arrest warrant was "bogus" (D.I. 2 at 36).

**4.** The plaintiffs claim that The City of Dover, Delaware was aware of Stump's conduct by

stating that Stump has a "long history of such conduct, and the City of Dover, Delaware Police Superiors and City Government have continued to allow Stump to act in such an outrageous manner without taking any steps to correct the problem at hand" (D.I. 2 at 3e).

conspired to kidnap and falsely imprisoned Ventura and her children (D.I. 2 at 3f).[5] The plaintiffs also maintain that after August 27, 1997, Ventura was raped and robbed while staying at the shelter in which Langrell placed her and was denied medical care.[6]

The plaintiffs also claim joint violations of their rights. They allege that (1) Langrell and Helsel unlawfully searched their home and seized Steelman's property as part of a conspiracy to conduct an illegal search (D.I. 2 at 3f), (2) Langrell and Wilson violated their rights to counsel and conspired to deprive them of their rights to due process by lying to a Family Court Judge (Compl. at 36), and (3) Stump, Langrell, and Helsel violated their rights by denying them their property without due process of law (D.I. 2 at 36).

The plaintiffs seek the following relief: (1) a declaratory judgment that all the defendants violated each of the plaintiffs' civil rights, (2) a temporary restraining order to prevent Steelman's extradition, (3) a permanent injunction to prevent Steelman's extradition, (4) a preliminary injunction to prevent The State of Delaware from convicting him, (5) a preliminary injunction to prevent The State of New Mexico from convicting him, (6) that the court order DFCS to close its case and restore Ventura's parental rights, (7) $350,000 in "actual damages", (8) punitive damages, (9) $177,000,000 compensatory damages plus interest from The State of Delaware, (10) $500,000 compensatory damages from The State of New Mexico and (11) costs (D.I. 2 at 5–5a).

## B. Analysis

### 1. The New Mexico Defendants' Motion to Dismiss

According to the two prong test articulated above, to determine whether personal jurisdiction exists over The New Mexico Defendants, the court must first examine Delaware's long arm statute, Del. C. Ann. tit, 10 § 3104. If The New Mexico Defendants fall within the purview of § 3104, the court is then obligated to determine whether The New Mexico Defendants have the requisite "minimum contacts" which demonstrate that they have "purposefully availed" themselves of the privileges extended by the State of Delaware.[7]

The New Mexico Defendants correctly state that the acts they allegedly committed all occurred outside of Delaware.[8] Therefore, they argue, § 3104(c)(4) is the only section of the statute applicable to this action. The New Mexico Defendants maintain that they do not fall within § 3104(c)(4) since none of them (1) regularly does or solicits business in Delaware, (2) engages in any other course of conduct in Delaware, (3) or derives substantial revenue from things or services in Delaware. The plaintiffs argue that arranging for Steelman's extradition with Delaware officials is enough to bring The New Mexico Defendants within the reach of § 3104(c)(4). Although the court has been unable to find any cases directly on point, subjecting out of state officials to personal jurisdiction for actions taken out of state,

5. The plaintiffs maintain that these actions caused Ventura and the children "grave emotional distress and mental anguish." *Id.*

6. The plaintiffs claim Ventura "has suffered such psycological [sic] and emotional anguish that she has not been able to carry out her wifely duties to he [sic] husband, and cannot even stand to be touched." *Id.*

7. In their "Objection to Defendants' Motion to Dismiss" (D.I.51), the plaintiffs argue that the instant motion must be converted into a summary judgment motion. This argument is misplaced since questions of personal jurisdiction are threshold determinations that must be addressed before the court examines issues of summary judgment.

8. The plaintiffs do not contest this. Indeed, the allegations against The New Mexico Defendants arise from an interaction between Steelman and police officers in New Mexico. Although the plaintiffs allege conspiracy, there is no claim that The New Mexico Defendants ever entered Delaware or committed any acts therein.

even if done at the request of Delaware officials, exceeds the plain language of § 3104(c)(4).[9]

 The exercise of personal jurisdiction is proscribed by "traditional notions of fair play and substantial justice" inherent in the Due Process Clause of the Fourteenth Amendment. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Even if the act of extraditing Steelman to Delaware could somehow be construed to bring The New Mexico Defendants within the purview of § 3104(c)(4), the record in this case lacks the support needed for the court to conclude there are sufficient "minimum contacts" and the necessary "purposeful availment" to support a finding of either specific or general personal jurisdiction.[10] Surely, hailing these defendants into court in Delaware based solely upon this one act could not be said to comport with 'traditional notions of fair play and substantial justice.'

The plaintiffs' remaining arguments for personal jurisdiction are spurious, legally inaccurate, and inapposite.[11] The existence of a federal question—which raises the issue of whether a court has jurisdiction over the subject matter of a lawsuit— is separate from the issue of whether the court has jurisdiction over the persons named in the action. For this reason, the plaintiffs' assertions regarding New Mexico's inability to assert personal jurisdiction

miss the mark. Although the plaintiffs may be correct that the New Mexico courts would dismiss this action, such a ruling would presumably be based on principles of qualified or sovereign immunity rather than on the absence of personal jurisdiction. Finally, the plaintiffs' argument regarding judicial economy might be germane to a decision on whether to transfer a case. However, this factor has no bearing on the question of whether a court can exercise personal jurisdiction over the parties.[12] Therefore, the court finds that it may not exercise personal jurisdiction over The New Mexico Defendants. The court will dismiss the plaintiffs' case against them according to the requirements of Fed.R.Civ.P. 12(b)(2).

### 2. Officer Helsel and the City of Harrington's Motion for Summary Judgment

As an initial matter, Helsel and The City of Harrington's motion is styled a "Motion to Dismiss/Summary Judgment". Both parties have presented affidavits in support of their respective positions on the motion. The court will consider these affidavits. Furthermore, the plaintiffs argue that the court should convert the motion into one for summary judgment. Given these facts, the plaintiffs may not later complain that they received insufficient notice that the court would treat the motion as one for summary judgment. Under the

---

**9.** Del.Code Ann. tit, 10 § 3104(c)(4) states "the court may exercise personal jurisdiction over any nonresident ... who in person or through an agent ... [c]auses tortuous injury in the State or outside the State by an act or omission outside the state if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from its services, or things used or consumed in the State."

**10.** The plaintiffs have not met their burden since they have not adduced any evidence beyond allegations to support a finding of personal jurisdiction over The New Mexico Defendants. *See Carteret Savings Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir.1992)

(citing cases) (stating that plaintiff has burden to prove personal jurisdiction by preponderance of the evidence through affidavits or other competent evidence once defendant raises the issue); *Siemens Aktiengesellschaft v. LG Semicon Co., Ltd.*, 69 F.Supp.2d 622, 624 (D.Del.1999) (same).

**11.** Although the plaintiffs filed a "Rebuttal to Defendant's Reply Motion to Dismiss," the court has not considered it since it was filed in violation of Local Rule 7.1.2.

**12.** Obviously, the court cannot transfer a case to a federal court in New Mexico if it has no personal jurisdiction over The New Mexico Defendants in the first place.

circumstances, the court will regard the motion as requesting summary judgment rather than a dismissal. *See, e.g., Boyle v. Governor's Veterans Outreach & Assistance Center*, 925 F.2d 71, 74–75 (3d Cir. 1991). Thus, the court will apply the aforementioned summary judgment standard to determine (1) whether there are any genuine issues of material fact and (2) whether Helsel and the City of Harrington are entitled to judgment as a matter of law.[13]

█ The gravamen of the plaintiffs' claim against The City of Harrington and Helsel is that on August 27, 1997 Helsel illegally entered a mobile home located at 262 Messick Road, Harrington, Delaware and seized Ventura and her minor children by drawing a gun and not allowing them to leave the premises. To assist it in determining the existence of any genuine issue of material fact, the court is presented with the parties' briefs and with affidavits by Helsel and Steelman.[14]

In his affidavit, Helsel states that upon arriving at the premises, he advised Ventura that she no longer had a legal right to be there and he called Langrell to assist her in finding a new place to stay.[15] After Langrell arrived on the scene and explained to Ventura that DFCS would provide a place for her and her children to stay, Ventura, her children, and Langrell left the premises. According to Helsel's affidavit this was the only contact he had with Ventura and her children.

There is absolutely no evidence in the record to contest Helsel's statements. The only evidence proffered by the plaintiffs is an affidavit by Steelman. Helsel states that Steelman was not present at 262 Messick Road during the alleged incidents and there is nothing in the record to suggest otherwise.[16] Although Steelman's affidavit lists various facts to which Ventura and her children will testify, his affidavit does not present the court with any competent evidence to place a genuine issue of material fact in dispute.[17]

13. The record indicates that Stump, The City of Dover, and The City of Milford have not filed any summary judgment motions. Courts are generally prevented from sua sponte granting summary judgment. The claims raised by the plaintiffs and the defenses available to Stump, The City of Wilmington, and The City of Milford are identical to the ones raised in the instant motion. Further, the reason Stump, The City of Dover, and The City of Milford did not file a dispositive motion was that the court granted their motion for extension of time until it disposed of the plaintiffs' motion to file a supplemental complaint. Since any summary judgment motion filed by Stump, The City of Dover, and The City of Milford would be a virtual carbon copy of the one presently before the court and the plaintiffs have had ample opportunity to present evidence, the court will consider the aforementioned defendants joined in the summary judgment motion. *See Macon v. Youngstown Sheet and Tube Co.*, 698 F.2d 858, 861 (7th Cir.1983) (distinguishing general ban on sua sponte grants of summary judgment where claim at issue was same as against other defendants, had identical defenses, and plaintiff had ample opportunity to submit evidence).

14. Although the plaintiffs filed a rebuttal to the defendants' summary judgment reply brief, the court will not consider it since they did not seek leave of the court in violation of Local Rule 7.1.2.

15. Helsel states that he was called to the premises because Ventura was resisting a lawful eviction. Although the plaintiffs correctly point out that Helsel does not provide documentation regarding the eviction, whether there was a lawful eviction is irrelevant to the plaintiffs' allegations in this case. Further, the plaintiffs have not produced any evidence to contest Helsel's statements.

16. It is a fundamental principle of Fourth Amendment jurisprudence that Steelman does not have standing to challenge any actions by Helsel and The City of Harrington which violate the constitutional rights of Ventura and her children. Although Steelman and Ventura brought this suit together, he cannot sue on her behalf.

17. It is ironic that the plaintiffs argue that Helsel's claims regarding the eviction proceedings are hearsay since they are based on statements made to Helsel by Kevin Todd of Messicks Mobile Homes. Helsel's statements may not be hearsay since it appears they are not offered for the truth, but for their effect on him. On the other hand, all of the "facts"

 Even if the court were to overlook the evidentiary problems of Steelman's affidavit, the plaintiffs would not be entitled to a judgment against The City of Harrington. The plaintiffs have not provided any evidence to demonstrate that The City of Harrington is liable under the theory of respondeat superior for Helsel's actions. Municipal governments are only liable under 42 U.S.C. § 1983 for unconstitutional or illegal policies, customs, or practices, not for the acts of their employees. *See Monell v. Dept. of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The plaintiffs do not offer any facts to suggest that their injuries were caused by any constitutionally impermissible policy or custom of The City of Harrington. In their brief, it appears the plaintiffs allege that inaction or lack of knowledge by The City of Harrington "to a known legal problem" is enough to satisfy the requirements of *Monell*. Although it is true that establishing a policy of inadequate supervision or training is one way to show the existence of a custom or policy, the plaintiffs have not presented any proof of deliberate indifference by The City of Harrington. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (declaring that

"[o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality . . . can a city be held liable for such a failure to train under section 1983.").

Many of the plaintiffs' claims against Helsel also fail regardless of the deficiencies in Steelman's affidavit. Although the plaintiffs allege that Helsel, Stump, and Langrell engaged in a conspiracy to violate their civil rights by entering and searching the premises at 262 Messick Road, the evidence the court has before it either suggests otherwise. Helsel's affidavit explicitly states that he did not have any discussions with Stump regarding any of the plaintiffs prior to August 27, 1997. Even if the conversation on August 27, 1997 were sufficient to constitute a predicate act, the plaintiffs offer nothing more than conclusory allegations to support their claims of violation of their federally protected rights.[18]

The other arguments the plaintiffs make are spurious.[19] Because the plaintiffs have failed to offer even a 'scintilla of evidence' to raise a genuine issue of material fact regarding their claims against Helsel and the City of Harrington, the court will dismiss all claims against them pursuant to Fed.R.Civ.P. 56(e).[20]

in Steelman's affidavit are offered for the truth, since he asserts that Ventura and her children will testify that various events actually occurred. The court cannot consider Steelman's affidavit in deciding the instant motion. *See* Fed.R.Civ.P. 56(e) (requiring all affidavits to be based on personal knowledge, to set forth facts that would be admissible in evidence, and to show that affiant is competent to testify to the matters stated).

**18.** The plaintiffs' claims of a conspiracy in violation of 42 U.S.C. § 1985(3) are especially baseless. The record does not suggest—nor do the plaintiffs allege—that Langrell and Helsel had any racial motive or other kind of discriminatory animus. *See Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971) (stating that 42 U.S.C. § 1985(3) prohibits conspiracies predicated on "racial, or perhaps otherwise class-based, invidiously discriminatory animus").

**19.** The plaintiffs argue that since Helsel and The City of Harrington filed their motion after

the court imposed deadline to answer, the motion should be stricken. The City of Harrington had until June 21 and Helsel had until June 16, 1999, to file their responses. The joint motion was filed on June 18, 1999. The City of Harrington was timely and Helsel was only two days late. Although Helsel may have literally violated the deadline, the court will not strictly enforce the deadline since it has not done so for the plaintiffs. For example, the plaintiffs' response to The New Mexico Defendants' motion was due on June 10, 1999 but it was not filed correctly until June 17, 1999. Even though the plaintiffs are pro se, given that the election to file a joint motion achieved certain economies for the court and all the parties, and given that only one of the defendants missed the deadline by only two days, the court will not strike the motion.

**20.** In dismissing the claims against Helsel and The City of Harrington, the court is also dismissing the plaintiffs' claims against

### 3. The State Defendants' Motion to Dismiss

Although The State Defendants filed a motion to dismiss, the court will treat it as a summary judgment motion since it will consider affidavits submitted by Steelman, Ventura, and Langrell. *See, e.g., Boyle,* 925 F.2d at 74–75. As mentioned above, although the court has not formally announced its intention to convert the motion to dismiss, all parties have had more than adequate notice.[21] Therefore, the court will examine the papers and affidavits filed by the parties in light of the summary judgment standard mentioned above.[22]

In their complaints, the plaintiffs allege The State Defendants violated their rights under the Fourth, Fifth, and Fourteenth Amendments, the Delaware Constitution, and 42 U.S.C. § 1983. The basis for these allegations is actions taken by Langrell with respect to Ventura and her children on August 27, 1997. The plaintiffs' inclusion of Donastrogis and Wilson appears to be based on their supervisory roles over Langrell and on statements they made in court. Steelman has an additional claim against Carper for violating his civil rights by extraditing him from New Mexico to Delaware.[23]

In support of their motion, The State Defendants offer an affidavit from Langrell, a "Consent to Placement" form signed by Ventura authorizing DFCS to place her children temporarily in foster care, and an order dated December 11, 1997 by the Honorable William J. Wallis, Jr. of the Family Court of the State of Delaware awarding DFCS "legal care and custody" of Angel, Oscar, and Aniceto Ventura.[24] Taken together, these documents demonstrate that there is no genuine issue of material fact in this case.

The plaintiffs have not presented a shred of evidence to dispute any of the facts raised by the documents offered by The State Defendants. As The State Defendants correctly note, the "plaintiffs do nothing more than rest on the allegations and denials presented in State defendants' motion ...." Steelman's affidavit regarding Ventura's interactions with Langrell is irrelevant since it is not based on personal knowledge of the events.[25] Although Ventura's affidavit recites a litany of allegedly illegal actions by Langrell, the record demonstrates conclusively that she authorized DFCS to place her children in a foster home. Finally, Ventura's allegation that she was forced to sign the "Consent to Placement Form" is completely unsupport-

Stump, The City of Dover, and The City of Milford. *See supra* at note 13.

21. All parties agree the court should apply the summary judgment standard in deciding this motion. *See* Pl. Ans. Br. Opp. Mot. Dismiss at 2; Def. Reply. Br. Supp. Mot. Dismiss at 2–3.

22. The court will not consider the plaintiffs' "Traverse to State of Delaware Defendants Reply Memorandum of State Defendants' Motion to Dismiss". Local Rule 7.1.2 limits briefing by the parties, without leave from the court, to an opening brief, answer, and reply. The plaintiffs did not request relief from the Local Rules.

23. Steelman complains about actions that Carper allegedly took in his supervisory capacity as Governor of Delaware.

24. Although The State Defendants also offer a "Consent to Obtain/Release Information" form signed by "Paul V. Mayo", the court will not consider it. Although the record strongly suggests "Paul V. Mayo" is an alias used by Steelman, this seems to be a matter of some dispute. There are other problems with the form. Even if there was no dispute that "Mayo" is actually Steelman, there is record evidence that Steelman is not the actual or adopted father of Ventura's children. Any consent he gave regarding Ventura's children may be legally problematic.

25. Steelman's affidavit states it is based on his "personal awareness" rather than upon personal knowledge. By his own admission, Ventura did not "advise" Steelman of the events of August 27, 1997 until four days later, on August 31, 1997. Therefore, Steelman's affidavit suffers from the same defects as the one he submitted in response to Helsel and The City of Harrington's motion for summary judgment. *See supra* at note 17 and accompanying text. .

ed by any evidence in the record before the court.

Although the plaintiffs made an attempt—albeit unsuccessful—to raise a genuine issue of material fact regarding the events of August 27, 1997, they have not offered any evidence regarding the claims against Carper, DFCS, Donastrogis, or Wilson. Even if the court were to ignore the strong arguments supporting sovereign immunity raised by The State Defendants, the plaintiffs have failed to adduce—or even allege—any specific facts to support their claims that The State Defendants violated the rights guaranteed to them by the Delaware Constitution, the Fourth, Fifth, and Fourteenth Amendments, and protected by the provisions of 42 U.S.C. § 1983.

The plaintiffs' other arguments in opposition to The State Defendants' motion either misapprehend the law, mischaracterize the record, or raise non-material factual issues.[26] Since the court finds there is no genuine issue of material fact and that the plaintiffs have not met their burden, the court will grant The State Defendants' motion for summary judgment pursuant to the provisions of Fed. R.Civ.P. 56(e).

**4. The Plaintiffs' Motion for Order to Show Cause and For Sanctions**

The plaintiffs have also filed a motion for an order to show cause and for sanctions. In the motion, the plaintiffs allege that Major Perry Phelps violated an order of the court dated March 24, 1999. Steelman claims Major Phelps prevented him from "serving" Ventura with his pleadings in violation of his First and Fourteenth Amendment rights. Steelman does not plead any facts to support this motion. The State of Delaware did not file a response.

The court will decline to exercise its discretion in this area and deny the plaintiffs' motion since it is without merit and is unsupported by facts. First, the order the plaintiffs allege Major Phelps violated is nothing more than an order to the United States Marshals to serve the defendants in this case (D.I.22). Since the plaintiffs do not contend Major Phelps interfered with service of process on the defendants, there has not been a violation of a court order upon which to predicate sanctions. Second, even if Major Phelps somehow violated an order of the court, the plaintiffs have not proffered any specific facts to support their claim. The court is uncomfortable exercising its discretion to order sanctions given the current state of the record. Therefore, the court will deny the plaintiffs' motion.

**III. Conclusion**

The court has afforded the plaintiffs more than an ample opportunity to conduct discovery and present their case. Although they have filed numerous voluminous submissions, their allegations remain as vague and unsupported as they were the day they first filed their complaint, almost two years ago. Since the plaintiffs' claims either fail as a matter of law or are wholly without factual support, the court will dismiss the case against all the defendants. Finally, there is no basis for the

---

**26.** The plaintiffs argue (1) that Fed.R.Civ.P. 5 requires that they be sent certified copies of documents they originally filed and that they were not properly served with the instant motion, (2) that the court should appoint them counsel and grant them leave to amend their complaint, (3) that evidence The State Defendants submitted should be excluded since its authenticity has not been proven and (4) that Steelman did not introduce himself as "Mayo" to Langrell. The plaintiffs misunderstand the requirements of Fed.R.Civ.P. 5 and have provided no evidence that the motion was improperly served. Arguments regarding appointment of counsel and leave to amend are not responsive to a summary judgment motion. The plaintiffs have not provided any evidence to suggest that documents provided by The State Defendants are not authentic, as they must. Finally, whether Steelman pretended to be "Mayo" is not a fact that is material to determining whether The State Defendants abridged any of the plaintiffs' rights.

plaintiffs' motion for a show cause order and for sanctions against The State of Delaware. The court will issue an order in conjunction with this opinion.