96 N.J. Super. 81 (1967)
232 A.2d 462
VIRGINIA RONAYNE KNIGHT, AN INFANT BY HER GUARDIAN AD LITEM, WILLIAM C. KNIGHT, AND WILLIAM C. KNIGHT, PLAINTIFFS,
v.
SAN JACINTO CLUB, INC., AND STEPHEN LONGSTAFF, BY HIS PARENT AND NATURAL GUARDIAN, RALPH S. LONGSTAFF, JR., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided June 19, 1967.
*84 Mr. John P. Wallace for plaintiffs (Mr. Samuel M. Lyon, Jr., attorney).
Mr. Mark D. Larner for defendant Stephen Longstaff (Messrs. Budd, Larner, Kent & Gross, attorneys; Mr. Larner on the brief).
SHIELDS, J.C.C. (temporarily assigned).
This is a personal injury action instituted on behalf of Virginia Ronayne Knight, an infant, by her guardian ad litem William C. Knight, and by William C. Knight individually, for injuries sustained on or about July 19, 1965 at the San Jacinto Club in Allendale, New Jersey. The club is also a defendant.
While swimming in the pool infant plaintiff was injured when defendant Stephen Longstaff dove, fell or jumped upon her from a diving board. Longstaff is a resident of Illinois, his sole contact with this State being his visit in July 1965, at which time the accident occurred.
As a defense defendant asserts lack of jurisdiction, insufficiency of process and insufficiency of service of process. Plaintiffs move to strike these defenses under R.R. 4: 12-4. This opinion is a determination of that motion.
Art. VI, Sec. II, par. 3 of the 1947 New Jersey Constitution provides that:
"The Supreme Court shall make rules governing the administration of all courts in the State and, subject to law, the practice and procedure in all such courts."
Acting under this constitutional mandate the Supreme Court promulgated R.R. 4:4-4(j):
"Whenever it shall appear by affidavit of the attorney for the plaintiff or of any person having knowledge of the facts, that, after diligent inquiry and effort, an individual cannot be served in this State under any of the preceding paragraphs of this rule, then, consistent with due process of law, service may be made by mailing, registered mail, return receipt requested, a copy of the summons and complaint to the individual addressed to his dwelling house or usual place of abode."
*85 The affidavit required by the rule has been filed with this court. The question to be resolved is whether R.R. 4:4-4(j) applies to a nonresident defendant whose only contact with the State of New Jersey is an alleged tortious act committed here.
"Every variety of in personam authority over nonresident individuals which the United States Supreme Court will not reject as an excess of constitutional due process" has been vested in the courts of this State upon compliance with the provisions of the aforementioned rule. Schnitzer and Wildstein, New Jersey Rules Service, Special Release No. 4 (1963), p. 19.
While there has not been an appellate court opinion dealing specifically with R.R. 4:4-4 (j), there has been a definitive statement by the Appellate Division on R.R. 4:4-4(d), the companion subsection to (j). Subsection (d) authorizes service upon a foreign corporation "subject to due process of law." Subsection (j) provides for service upon nonresident defendants "consistent with due process." The limitations of both sections are coextensive, and it therefore appears that the Appellate Division's expression of the limitations of (d) are applicable to (j).
"R.R. 4:4-4(d) permits extra territorial service subject only to `due process of law'  that is, to the outermost limitations permitted by the Federal Constitution. Our rule contains no definitions, limitations or exceptions. * * * To paraphrase a popular song, anything any state can do under the Federal Constitution we can do, and if a state is limited by the terms of its statutes or rules, we can do it better. Hence, we do not need to struggle with the oft difficult problems of statutory construction faced by courts in states with detailed `long arm statutes.'" Roland v. Modell's Shoppers World of Bergen Cty., 92 N.J. Super. 1, 7 (App. Div. 1966)
Any assertion of jurisdiction that is consistent with due process of law under the Fourteenth Amendment of the Federal Constitution is cognizable under our court rules. It will serve no useful purpose, therefore, to trace the evolution of the requirements for personal jurisdiction over nonresidents *86 from the rigid rule of Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1878), to the more liberal and flexible standard set forth in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945):
"* * * due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" (326 U.S., at p. 316, 66 S.Ct., at p. 158)
The practical question to be resolved is whether this is a reasonable circumstance in which to exercise judicial power. The judgment as to reasonableness is made upon an investigation of minimum contacts and the traditional notion of fair play and substantial justice.
Two trial court opinions have dealt with R.R. 4:4-4(j). In De Fazio v. Wright, 229 F. Supp. 111 (D.C.N.J. 1964), it was held that service was proper upon nonresident defendants who were residents of New Jersey at the time of the alleged tort and had made use of this State's recreational facilities. In Carlin v. Schuler, 89 N.J. Super. 366 (Law Div. 1965), it was decided that the court would have jurisdiction over the nonresident defendant based upon the facts that he was a resident before the time of the tort, he was in the armed services, his parents were still residents of this State; and the tort was alleged to be an intentional one for failure to comply with the particulars of R.R. 4:4-4(j). However, service was quashed. Both of these cases found circumstances sufficient to satisfy the test of "minimum" contacts. Neither of these cases dealt with a single tort committed in this State as a sufficient predicate upon which to base in personam jurisdiction.
International Shoe v. Washington, supra, by itself, renders it difficult to rule that in personam jurisdiction could be exercised upon the single contact of a tortious act. The general words of that case are not as readily applicable to *87 a single act situation as they are to a foreign corporation whose minimum contacts are used to determine its presence in the forum state for the purposes of suit. However, International Shoe, read in conjunction with McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), presents a more comprehensive approach. In McGee the court explored the State's "manifest interest" in providing a forum:
"It cannot be denied that California has a manifest interest in providing effective means of redress for its residents * * *." 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223, 226.
McGee adds to the "minimum contacts" theory of International Shoe the interest analysis approach that must be adopted to determine whether the "minimum contacts" are such as to render suit in the forum state reasonable. The adoption of such an approach permits state courts to expand jurisdiction on the basis of activities within the State. Comment, "State Court Jurisdiction," 73 Harv. L. Rev. 909, 947 (1960). This expansion, however, must be within the limits of the admonition given in Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958):
"* * * it is a mistake to assume that this trend [International Shoe] heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. * * * Those restrictions are more than a guarantee of immunity from inconvenience or distant litigation. They are a consequence of territorial limitations on the power of the respective States." (357 U.S., at p. 251, 78 S.Ct., at p. 1238)
This admonition was based upon the court's finding that:
"The cause of action in this case is not one that arises out of an act done or transaction consummated in the forum State." (at p. 251, 78 S.Ct., at p. 1238)
The act complained of in the instant case was consummated in the forum state. New Jersey courts will go as far as the United States Supreme Court will allow under the *88 concept of due process of law. The question, then, is whether the latter court will uphold jurisdiction based solely on the single tort of a nonresident defendant committed in the forum state.
"It seems probable that the United States Supreme Court will also accord this approach constitutional sanction as the occasion is presented. Clearly it would seem that any tortious act within the state or resulting in injury within the state is adequate to sustain jurisdiction." Goodrich, Conflict of Laws (4th ed. 1964), p. 126.
To date the United States Supreme Court has not passed on the single-act "long arm" statutes. American Cyanamid Co. v. Rosenblatt, 16 N.Y.2d 706, 261 N.Y.S.2d 898, 209 N.E.2d 554 (Ct. App. 1965), represents a determination by the highest court of New York State that the New York "long arm" statute, N.Y. Civil Practice Law and Rules, § 302(a)2, is a constitutional assertion of jurisdiction by the forum state. The United States Supreme Court dismissed the appeal from that judgment "for want of a substantial federal question." Rosenblatt v. American Cyanamid Co., 382 U.S. 110, 86 S.Ct. 256, 15 L.Ed.2d 192 (1965), rehearing denied 382 U.S. 1002, 86 S.Ct. 533, 15 L.Ed.2d 491 (1966).
Before the appeal was dismissed, defendant applied for a stay of judgment. Mr. Justice Goldberg, in chambers, denied the application because defendant's constitutional argument was insubstantial. 86 S.Ct. 1, 15 L.Ed.2d 39. He reasoned that:
"The logic of this Court's decisions in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 [161 A.L.R. 1057], and McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223, supports the validity of state `long arm' statutes such as the one involved here which base in personam jurisdiction upon commission of a `tortious act' in the forum State." 86 S.Ct., at p. 3, 15 L.Ed.2d, at p. 43.
Then, in quoting from Currie, "The Growth of the Long Arm", 1963 U. Ill. Law Forum, 515, 540, he stated:
*89 "Indeed, the constitutionality of this assertion of jurisdiction, today, could only be doubted by those determined to oppose the clear trend of the decisions. This situation is exactly that of the nonresident-motorist statutes, which were long ago upheld, except that the highways are not directly involved. It is now clear, if it was ever in doubt, that the nonresident-motorist cases were not really based on `consent' but on the interest of the forum State and the fairness of trial there to the defendant." Ibid.
Here, once again, we have the "minimum contacts" theory of International Shoe expressed in terms of "interest of the forum state" and "fairness of trial there to the defendant." Ultimately, then, the question whether New Jersey will recognize a single tort committed within its boundaries as a predicate for in personam jurisdiction must be resolved in terms of "minimum contacts" translated into factual considerations of interests to the forum state and fairness of trial there to defendant.
The first of these factual determinations, defendant Longstaff contends, is whether the tort was intentional or not. It is urged that the tort must be intentional before this State will exercise in personam jurisdiction over a nonresident defendant. Rosenblatt v. American Cyanamid Co., supra, is cited in support of this position. There is no reason to consider the question of intentional or unintentional tort. It is true that the tortious act complained of in Rosenblatt was intentional, but that fact had nothing to do with the statements of Mr. Justice Goldberg quoted at length above. It was only after he had stated the basic jurisdictional justification of long-arm statutes (International Shoe and McGee) that he went into the question of intentional tort.
"It seems to me that this is a very strong case for the assertion of `long arm' jurisdiction. If it is fair in a due process sense to subject a transient motorist to in personam jurisdiction on the basis of a single negligent tort, Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091, surely it is equally fair to hold a person like appellant, who, it is alleged, intentionally entered a State for the purpose of committing a tort therein, personally responsible in the courts of that State." 86 S.Ct., at p. 4, 15 L.Ed.2d, at p. 43.
*90 This statement, in the context of the opinion, supports the conclusion that a tortious act committed within the State constitutes a jurisdictional predicate "consistent with due process." An intentional tort "presents a very strong case" for the assertion of such jurisdiction. The fact that the latter is stronger does not make the former insufficient. Furthermore, "in an area in which fiction abounds, `great caution should be used not to let fiction deny the fair play' that marks the outlines of jurisdictional concepts." A court must have "sufficient contacts with the individual to make it a reasonable forum for the determination of the controversy in which he is involved." Goodrich, op. cit., 112, 115.
The tortious act complained of in this case took place within this State. Presumably the witnesses are here. Certainly the treating physicians are here. These considerations, together with the fact that one of the defendants is here, make it of "interest" to this State to provide a forum for its residents so that justice may be furthered and litigation may not become an unbearable burden. It will be inconvenient for defendant to defend in this State, but this inconvenience in no way "[offends] traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, supra.
It is the opinion of this court, therefore, that the facts presented in this case warrant the assertion of in personam jurisdiction upon compliance with R.R. 4:4-4(j).
The motion to dismiss the defenses is granted.