702 A.2d 1340

ACCURA ZEISEL MACHINERY CORP., PLAINTIFF–APPELLANT, v. TIMCO, INC. AND KENNETH BURBAGE, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued November 19, 1997—Decided December 1, 1997.

560

Before Judges SHEBELL, A.A. RODRÍGUEZ and COBURN.

*John J. Petriello* argued the cause for appellant (*Levy, Ehrlich & Kronenberg,* attorneys; *Mr. Petriello,* on the brief).

*Jonathan M. Preziosi* argued the cause for respondents (*Jamieson, Moore, Peskin & Spicer, P.C.,* attorneys; *Mr. Preziosi,* of counsel; *Mr. Preziosi* and *David F. Swerdlow,* on the brief).

The opinion of the court was delivered by

SHEBELL, P.J.A.D.

On August 8, 1996, plaintiff, Accura Zeisel Machinery Corp. ("Accura"), filed a complaint in the Law Division against Timco, Inc. ("Timco") and Kenneth Burbage ("defendants"). On September 16, 1996, defendants filed a notice of removal to the United States District Court for the District of New Jersey. However, on October 23, 1996, the District Court judge remanded the matter back to the State Court. On November 20, 1996, defendants moved to dismiss Accura's complaint for lack of personal jurisdiction or, in the alternative, on grounds of *forum non conveniens*. After oral argument, the Law Division judge held that personal jurisdiction over the defendants was not established. An order of dismissal was entered on January 10, 1997. Accura appeals and we reverse and remand.

Accura's complaint alleges damages arising from the August 1995 sale of a 1983 Horizontal Machining Center by Timco to Accura. The Machining Center is a computerized machine weighing over 20 tons that "cuts," or makes, metal parts.

Accura is a New Jersey corporation with its principal place of business in Englewood. Accura is in the business of buying and selling industrial machinery. Henry Zeisel is Accura's Chief Executive Officer.

Timco, a Tennessee corporation with offices located in Columbia, Tennessee, engages in the business of buying and selling new and used metal working machinery. In the five years preceding the filing of the complaint, Timco made four sales of machinery to New Jersey commercial purchasers, including the sale to plaintiff. These machinery sales totalled $266,120.00, representing 2% of Timco's sales during the five year period.

Burbage was a Timco sales representative working out of Timco's Tennessee office. Burbage resides in Tennessee and has made only one visit to New Jersey, a one-day sales trip to Pennington.

The Machining Center, manufactured in 1983, was owned and used by Baldor, Inc. ("Baldor"), a Mississippi corporation, at its Mississippi plant from 1983 to 1993. In July 1993, Timco purchased the Machining Center from Baldor. In March 1994, Timco sold it to FMC Corporation, Inc. ("FMC") also located in Mississippi.

FMC placed the Machining Center on the floor at its Mississippi plant. The machine was under power and cycling or dry-running, but apparently was never used for making parts. In or about November 1994, FMC requested that Timco buy the machine back from them. Timco complied in December 1994.

In August 1995, Timco listed the Machining Center for sale in the "Used Equipment Directory," a nationally circulated trade publication produced in New Jersey. Zeisel responded to the advertisement by telephoning Timco's office in Tennessee. He spoke to Burbage about the Machining Center and requested a price quote. Zeisel alleges Burbage described the Machining Center as "in good operating condition," and that "FMC was disposing of the machine because FMC required a larger machine." Burbage alleges that Zeisel stated he was buying the Machining Center because he had a potential buyer for the machine.

On August 14, 1995, Burbage, in response to Zeisel's request, faxed a price quote on Timco's letterhead to Accura's office in New Jersey. The price quoted was $79,500, FOB Tupelo, Mississippi. The quotation letter listed the condition of the Machining Center as "very good," and its age as "New in 1983." It also noted that the Machining Center was "in plant under power," which Accura contends means that the machine was being used by FMC. The quote listed the Machining Center's specifications, stating "Temporary specifications subject to revision. Physical inspection to verify specifications is recommended." Burbage signed the letter.

Si Culp, a vice-president of Timco, in his certification, claimed that between August 14 and 17, 1995, Zeisel called from New

Jersey to Timco in Tennessee two to six times regarding the condition, history, and cost of the Machining Center. Culp noted that it was at Zeisel's request that he sent the original quotation letter and Machining Center photos to Accura *via* Federal Express. Zeisel contended that, at some point during negotiations for the machine, he asked Burbage if there was any reason why he should come to Mississippi to inspect the machine and Burbage responded that the machine was in use in FMC's plant. Zeisel maintains that Burbage never stated any repairs were required on the machine. On August 17, 1995, after agreeing to purchase the Machining Center for $45,000, Accura transmitted to Timco a purchase order for the Machining Center, confirming the deal.

Zeisel alleged in his certification that space was not available in Accura's warehouse and he, therefore, asked Burbage to have the Machining Center remain at FMC until Accura was ready to receive it. Burbage agreed, but subsequently called to say that the machine should be removed immediately. In early September 1995, Accura took delivery of the Machining Center from FMC's plant in Mississippi, and had it stored. On March 25, 1996, after space had cleared, Accura had the Machining Center delivered to their New Jersey warehouse. Zeisel alleges that this was the first time they realized the Machining Center did not appear to be as represented. Accura arranged for an expert to examine the machine and, according to Zeisel, the expert reported that the machine was inoperable with a multitude of problems. These included beat-up rusted parts, inoperable electronic components, areas on the machine that were scored and beaten, and missing doors and guards. The expert estimated that repairs would cost between $20,000 and $30,000, with no guarantee that the machine would function properly.

Upon learning the expert's opinion, Zeisel called FMC, who allegedly advised that the machine did not belong to FMC, and that it had never been in use at FMC. FMC advised that it also had an expert inspect the machine and was advised that extensive

repairs would be necessary and, therefore, FMC required that Timco rescind the sale.

*R.* 4:4–4(b)(1), pertaining to *in personam* jurisdiction, allows service of process outside of the State by mail or personal service, subject only to the requirement that it be "consistent with due process of law." We, therefore, consider whether New Jersey has personal jurisdiction over the defendants "consistent with due process of law." *Id.*

There are two types of personal jurisdiction: specific and general. If a cause of action arises directly out of a defendants's contacts with the forum state, the court's jurisdiction is "specific." *Waste Management, Inc. v. Admiral Ins. Co.,* 138 *N.J.* 106, 119, 649 *A.*2d 379 (1994); *Lebel v. Everglades Marina, Inc.,* 115 *N.J.* 317, 322, 558 *A.*2d 1252 (1989). If, however, the suit is not directly related to the defendant's contacts with the forum state, but is based instead on the defendant's continuous and systematic activities in the forum, then the State's exercise of jurisdiction is "general." *Waste Management, supra,* 138 *N.J.* at 119, 649 *A.*2d 379; *Lebel, supra,* 115 *N.J.* at 322, 558 *A.*2d 1252. Accura argues that personal jurisdiction exists over the defendants based on specific personal jurisdiction.

Under the relevant due process inquiry, the forum state's exercise of jurisdiction must be reasonable, which is measured by the "minimal contacts" doctrine, a threshold requirement for specific personal jurisdiction. *Hanson v. Denckla,* 357 *U.S.* 235, 251, 78 *S.Ct.* 1228, 1238, 2 *L.Ed.*2d 1283, 1296 (1958); *International Shoe v. Washington,* 326 *U.S.* 310, 66 *S.Ct.* 154, 90 *L.Ed.* 95 (1945); *Waste Management, supra,* 138 *N.J.* at 119–20, 649 *A.*2d 379; *Lebel, supra,* 115 *N.J.* at 322, 558 *A.*2d 1252. Minimal contacts requires "that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson, supra,* 357 *U.S.* at 253, 78 *S.Ct.* at 1240, 2 *L.Ed.*2d at 1298. Under a specific jurisdiction analysis, the minimum contacts inquiry must focus on "the relationship among the

defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 *U.S.* 186, 204, 97 *S.Ct.* 2569, 2579, 53 *L.Ed.*2d 683, 698 (1977); *Lebel, supra*, 115 *N.J.* at 323, 558 *A.*2d 1252.

▪ The "minimum contacts" requirement is satisfied so long as the contacts resulted from the defendant's purposeful conduct and not the unilateral activities of the plaintiff. *World–Wide Volkswagen Corp. v. Woodson*, 444 *U.S.* 286, 297–98, 100 *S.Ct.* 559, 567–68, 62 *L.Ed.*2d 490, 501–02 (1980); *Lebel, supra*, 115 *N.J.* at 323, 558 *A.*2d 1252. The purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts. *Burger King Corp. v. Rudzewicz*, 471 *U.S.* 462, 475, 105 *S.Ct.* 2174, 2183, 85 *L.Ed.*2d 528, 542 (1985). A defendants' "conduct and connection with the forum state must be such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen, supra*, 444 *U.S.* at 297, 100 *S.Ct.* at 568, 62 *L.Ed.*2d at 501; *Lebel, supra*, 115 *N.J.* at 324, 558 *A.*2d 1252.

▪ Once minimal contacts are established, the court must ensure that the maintenance of the lawsuit does not offend "traditional notions of fair play and substantial justice." *International Shoe, supra*, 326 *U.S.* at 316, 66 *S.Ct.* at 158, 90 *L.Ed.* 95; *Lebel, supra*, 115 *N.J.* at 322, 558 *A.*2d 1252. The relevant factors under this analysis are (1) the burden on the defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 *U.S.* 102, 113, 107 *S.Ct.* 1026, 1034, 94 *L.Ed.*2d 92, 105 (1987); *Waste Management, supra*, 138 *N.J.* at 122, 649 *A.*2d 379.

▪ To establish that defendants engaged in deliberate and purposeful acts with a New Jersey resident corporation sufficient to have made defendants reasonably anticipate being haled into New Jersey court, Accura relies on the following: (1) the offer

solicitation in the "Used Equipment Directory" trade magazine that was published and circulated in New Jersey; (2) the defendants' numerous telephone conversations with Accura, a New Jersey corporation (3) the mailing of the Machining Center photographs by defendants; (4) the submitted written quotation to Accura in New Jersey; (5) defendants' acceptance of payment from New Jersey by check; (6) defendants' awareness that Accura was a New Jersey corporation; (7) the fact that defendants were aware of Accura's intention to use or resell the Machining Center in New Jersey; (8) and the defendants' alleged sending of false statements into New Jersey, with the alleged intention of Accura relying on them to its detriment.

Defendants respond that plaintiff's proposed "material contacts" are insufficient because: (1) plaintiff initiated the contacts, including all of the telephone conversations, pursuant to its own business motive; (2) plaintiff sent the purchase order for the Machining Center to Timco in Tennessee; (3) plaintiff never indicated to them that the Machining Center was to be resold or used in New Jersey; (4) the advertisement was placed in a *national* publication, and that defendants could not on this basis have reasonably anticipated being haled into any one specific state's court; (5) defendants' sending of the price quotation and photographs were at the plaintiff's request and these simple transactions are not enough to justify long-arm jurisdiction; and (6) the evidence presented to the court shows nothing greater than a breach of warranty claim and, in defendants' opinion, certainly not a fraud claim.

Our Supreme Court's decision in *Lebel, supra,* involved specific personal jurisdiction and provides guidance in sorting out the parties' positions. 115 *N.J.* at 317–30, 558 *A.*2d 1252. *Lebel* involved a New Jersey buyer and a Florida seller of a luxury boat purchased in Florida. *Id.* at 320, 558 *A.*2d 1252. Over a two year period, after meeting the seller at a New York City trade show, the buyer received approximately twenty solicitous telephone calls from the seller regarding the boat. *Id.* Eventually, in New

Jersey, the buyer received and signed a Sales Agreement for the purchase of the boat. The buyer took delivery and registered his boat in Florida. *Id.* In finding that New Jersey had personal jurisdiction over the Florida seller, the Court focused on the fact that the seller knew the buyer was a New Jersey resident, the seller telephoned the buyer in New Jersey, the seller received payment from the buyer from New Jersey, and the seller mailed the contract which buyer signed in New Jersey. *Id.* at 324–25, 558 *A.*2d 1252.

In this case, as in *Lebel,* plaintiff alleges that defendants made fraudulent representations regarding the transaction. *Lebel, supra,* 115 *N.J.* at 326, 558 *A.*2d 1252. The Supreme Court held that "[w]hen ... a non-resident defendant purposely directs its activities to the forum, and the litigation results from alleged injuries that arise out of or relate to those activities, the forum may assert personal jurisdiction over the defendant." *Id.* at 326, 558 *A.*2d 1252 (citations omitted). The Court further stated that "Where a defendant knowingly sends into a state a false statement, intending that it should then be relied upon to the injury of a resident of that state, he has, for jurisdictional purposes, acted within that state." *Id.* (quoting *Vishay Intertechnology, Inc. v. Delta Int'l Corp.,* 696 *F.*2d 1062, 1066 (4th Cir.1982)).

That plaintiffs have alleged fraud will be taken into consideration in evaluating whether there has been a material contact, as several factors are already in the record to support plaintiff's fraud claims. These include the initial price quotation and machine specification that included statements by Burbage that the condition of the machine was "Very Good" and that the machine was "in plant under power."

Accura contends that defendants placed the advertisement in the Used Equipment Directory in the hopes of receiving a response for the machine from a potential purchaser like Accura. They contend that the subsequent negotiations between Accura and defendants was part of an anticipated course of action on defendants' part to follow up on the advertisement. Defendants

argue that they could not reasonably anticipate being haled into court due to placing an advertisement into a nationally circulated publication. They also point to non-New Jersey case law that supports the proposition that mere advertising in a national publication is not sufficient to create jurisdiction in a particular state. *See e.g., Gehling v. St. George's School of Medicine Ltd.,* 773 *F.*2d 539, 542 (3d Cir.1985).

In *Dave's Trash Removal v. Charm City,* 214 *N.J.Super.* 497, 500, 520 *A.*2d 415 (1987), a New Jersey trash-hauling business purchased a Mack Truck from defendant, a Maryland resident, as a result of an advertisement in a national waste hauler's magazine. The contract was signed in Maryland, and the truck was driven to New Jersey where plaintiff eventually discovered numerous mechanical difficulties. *Id.* at 499, 520 *A.*2d 415. A New Jersey trial court dismissed plaintiff's complaint on personal jurisdiction grounds. *Id.* at 500, 520 *A.*2d 415. On appeal, we declined to base our decision to reverse only on the advertisement as a sufficient material contact, stating:

> We prefer ... to base our reversal upon the totality of the circumstances, including not only the solicitation in a national publication, but also the contemplated use of the vehicle in New Jersey, a theory which in our view would itself have supported *in personam* jurisdiction.
>
> [*Dave's Trash, supra,* 214 *N.J.Super.* at 500, 520 *A.*2d 415.]

We find it a significant factor that Accura responded to a national advertisement placed by defendants. Through this advertisement defendants were the first to initiate contact with potential buyers. The purpose of the advertisement was to cause potential buyers to inquire about the Machining Center. The telephone calls from Accura to the defendants constitute material contact involving defendants because it was the response designed to occur by the defendants. It is the nature of the contacts that is the critical factor in material contacts analysis. *Lebel, supra,* 115 *N.J.* at 325, 558 *A.*2d 1252. The telephone calls and contacts benefitted defendants, as they were part of negotiations for the sale of the machine. Also part of the process benefitting defendants was the sending of a price quotation and photographs of the

Machining Center to New Jersey. Defendants' actions were intended to further the negotiations and the potential sale. The telephone calls and negotiations were not simply the " 'unilateral activities of the plaintiff,' " but were the result of " 'purposeful conduct' " on the part of both plaintiff and defendant relating to the transaction of business in New Jersey. *Cruz v. Robinson Engineering*, 253 *N.J.Super.* 66, 73, 600 *A.*2d 1238 (1992) (quoting *Lebel, supra*, 115 *N.J.* at 323, 558 *A.*2d 1252).

Defendants knew they were dealing with a New Jersey corporation and that Accura was in the business of selling used machines. Defendants must be held to know that Accura's potential purpose for the machine would be to either use it or resell it, and that these activities were likely to take place in New Jersey.

■ Regarding the fact that the Machine was sold F.O.B. Tupelo, Mississippi, our holding in *Cruz, supra*, is relevant. 253 *N.J.Super.* at 73, 600 *A.*2d 1238. We stated in *Cruz*:

> Whose carrier would actually transport ... [the] piece of machinery to New Jersey and which party would pay the freight are business matters, not, in the context of this case jurisdictional ones. We think it clear, in any event, that a party otherwise subject to long-arm jurisdiction by reason of the substantive nature of his contacts cannot immunize himself from the exercise thereof by the simple and unilateral expedient of a F.O.B. arrangement.
>
> [*Id.* at 73, 600 *A.*2d 1238.]

Defendants have been shown to have purposely directed their activities at New Jersey and were paid from New Jersey. Therefore, they should reasonably have anticipated being haled into New Jersey courts. The relevant contacts in New Jersey were not random, fortuitous, or attenuated. Also, as in *Lebel*, defendants' purposeful contacts included alleged fraudulent misrepresentations. Based on all of the circumstances, we conclude that personal jurisdiction consistent with due process may be exercised over the defendant in New Jersey.

The defendants additionally argue that they would sustain an unfair, unreasonable, and severe burden in defending this case in New Jersey. They contend they will be deprived of the live testimony of six "key witnesses," thereby rendering jurisdiction

unreasonable under the circumstances of this case. They also assert that Accura's claims amount to nothing more than a U.C.C. breach of warranty claim, and that New Jersey has no overriding interest in adjudicating such a case.

■   Plaintiff contends that it would be unduly burdened by litigating this matter in Mississippi or Tennessee, as the need to retain local counsel and to litigate in a forum distant from New Jersey would cause unneeded and prohibitive expense. They also argue that New Jersey has an interest in protecting its citizens from the wrongful conduct of non-residents.

We are convinced that traditional notions of fair play and substantial justice would not be offended by having the defendants submit to personal jurisdiction in New Jersey. We have held that

> Under the doctrine of *forum non conveniens* a court may decline jurisdiction whenever 'the ends of justice' suggest that plaintiff's chosen forum is inappropriate. In evaluating whether the 'ends of justice' require rejection of plaintiff's chosen forum, the court may determine whether the defendant will suffer a serious inconvenience if the case proceeds in plaintiff's chosen forum. More importantly, the transfer must not result in any significant hardship to plaintiffs.
>
> Once it is determined that plaintiffs will not be adversely affected by the transfer of jurisdiction, the defendant must demonstrate that the plaintiff's chosen forum is "demonstrably inappropriate." A mere balancing of conveniences is not sufficient to defeat plaintiff's choice and warrant dismissal.
>
> Courts may consider both public and private interest factors in determining whether plaintiff's forum is demonstrably inappropriate.
>
> [*Mowrey v. Duriron Co., Inc.*, 260 *N.J.Super.* 402, 409, 616 *A.*2d 1300 (App.Div. 1992) (citations omitted).]

The forum selected by plaintiff is not demonstrably inappropriate, as there is a substantial factual nexus between the issues in the litigation and the forum selected by the plaintiff. *D'Agostino v. Johnson & Johnson, Inc.*, 115 *N.J.* 491, 495, 559 *A.*2d 420 (1989). The contract involved a New Jersey resident corporation, and the warranties were made to a New Jersey corporation. They relate to a machine presently in this State, a foreseeable consequence of the sale. The allegedly fraudulent representations were made to a New Jersey corporation, giving rise to New Jersey's interest in protecting its citizens. The burden on defendant to litigate in New Jersey is no greater than the burden on plaintiff. "A mere

balancing of conveniences is not sufficient to defeat plaintiff's choice and warrant dismissal." *Mowrey, supra,* 260 *N.J.Super.* at 409, 616 *A.*2d 1300.

Reversed and remanded.