707 A.2d 477

ROCHELLE JACOBS, INDIVIDUALLY AND AS GUARDIAN AD LITEM OF HER MINOR DAUGHTER, HEATHER JACOBS, PLAINTIFFS–APPELLANTS, v. WALT DISNEY WORLD, CO., DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued February 25, 1998—Decided April 1, 1998.

444

Before Judges SHEBELL, D'ANNUNZIO and A.A. RODRGUEZ.

*Robert W. Rubinstein*, argued the cause for appellants (*Carchman, Sochor, Schwartz & Ragsdale, L.L.C.*, attorneys; *Mr. Rubinstein*, and *Caryn M. Rubinstein*, on the brief).

*Kathleen H. Dooley*, argued the cause for respondent (*Shanley & Fisher, P.C.*, attorneys; *James M. Altieri* and *Ms. Dooley*, on the brief).

The opinion of the court was delivered by

SHEBELL, P.J.A.D.

Plaintiffs appeal from the dismissal of their negligence complaint for lack of personal jurisdiction over defendant. We reverse and remand for further discovery.

On February 14, 1997, plaintiff, Rochelle Jacobs, individually and as guardian *ad litem* of her minor daughter, Heather Jacobs, filed a complaint against Walt Disney World, Co. (WDW). The complaint alleged in count one that WDW breached its duty to maintain a certain hotel facility in Orlando, Florida in a reasonably safe condition and that WDW negligently treated and handled Rochelle and Heather causing them damages. The second count alleged the negligent infliction of emotional distress upon Rochelle in advising her that the blood on the hotel sheets was human blood, but refusing to comment further or provide a copy of the

lab report, as promised. WDW was served with the complaint on March 7, 1997.

On April 1, 1997, WDW filed a motion to dismiss for lack of personal jurisdiction. Plaintiffs filed an opposition to defendant's motion to dismiss, and on May 16, 1997, the judge heard oral argument and entered an order dismissing plaintiffs' complaint for lack of personal jurisdiction pursuant to *Rule* 4:6–2(b). On May 19, 1997, plaintiffs moved for reconsideration of the May 16, 1997 order. Defendant opposed the motion, and on June 13, 1997, plaintiffs' motion was denied. Plaintiffs appeal.

In support of the court's jurisdiction over defendant, plaintiffs allege that during the years 1995 and 1996, they were "bombarded" with advertisements to visit Walt Disney World during its 25th Anniversary celebration. These advertisements included free promotions of the Disney Channel which contained advertisements for Walt Disney World, magazine advertisements, including advertisements in the Barney Fan Club Magazine, as well as the "standard" Disney commercials on television.

Rochelle certified that she ordered a Disney video of the movie "Aladdin" at the Disney Store in the Quakerbridge Mall in Mercer County, New Jersey. When she received the video, it included a postcard advertising a 4–day, 3–night package to Disney World. The postcard provided a toll free telephone number for Disney's Travel Company. Rochelle called the toll free number for information about a trip to Walt Disney World. In response, the travel service provided the requested information and included a videotape advertising Disney's 25th Anniversary. After reviewing the information, the family decided to visit Disney World. They charged the deposit to a credit card and the charge slip referenced the payee as WDW.

Defendant demonstrated to the satisfaction of the motion judge that WDW does not itself market or produce "Aladdin" in theaters or on videocassette, nor does it own or operate Disney stores. Further, Disney's Travel Company is owned by Walt Disney Travel Co., Inc., not WDW.

On November 10, 1996, plaintiffs were on their vacation at Walt Disney World and were staying at the Dixie Landings Resort, owned by Lake Buena Vista Communities. During their stay, plaintiffs received the business card of Rembert Vonk, Restaurant Guest Services Manager of Dixie Landings Resort. The business card indicated that Vonk was employed by WDW, and states that Dixie Landings is "Part of the Magic of the Walt Disney World Company."

Plaintiffs' hotel room consisted of two beds, one for Rochelle and her husband, and the other for her daughter, Heather. That evening, Rochelle put her daughter, Heather, to sleep in one of the beds. Prior to going to sleep, Rochelle checked on Heather and tried to place another pillow under Rochelle's head. She found that the pillow that Heather was laying on contained a "significant amount of blood." She also discovered that the bottom sheet contained some blood.

Rochelle contacted a worker from hotel housekeeping, who, after seeing the sheets, called the hotel manager. The housekeeper, at the manager's direction, stripped the bed of the sheets, and placed them in a plastic bag. Rochelle held onto the pillow case and intended to have it tested. The following morning, the evening manager came to the room and requested that Rochelle turn over the pillow case. When Rochelle said that she was keeping it to have it tested, the manager informed her that she would be guilty of stealing "Disney" property if she kept it. After Rochelle turned the pillow-case over, she was informed that Disney would have it tested and she would receive a copy of the laboratory report.

Upon returning home, Rochelle returned a message left on her answering machine from Theresa Forrest who stated that she was representing "Walt Disney World." Forrest said that the sheet and pillow case had been sent to a laboratory in another State and that once the report was received, they would contact Rochelle.

In December 1996, Rochelle placed a call to Forrest, who returned the call and informed Rochelle that the results showed it

was human blood on the pillow case and sheets. Forrest said that she could not tell Rochelle anything else about the report. Forrest refused Rochelle's request for a copy of the report. Several days later, Rochelle again contacted Forrest, who informed her that the matter was now in the hands of "Disney's legal department." Rochelle certified that her conversations with Forrest caused her great concern about the contents of the lab report, why the case was turned over to Disney's legal department, and whether her daughter had contracted a disease.

It appears from defendant's certification that WDW, a Delaware Corporation, is a subsidiary of Walt Disney Company, as is the Disney Channel and Lake Buena Vista Communities. WDW is not qualified to do business in the State of New Jersey and has neither incurred nor paid taxes to this State. WDW has not appointed an agent for service of process in New Jersey and is not listed in any New Jersey telephone directories. It has no officers, agents or employees in New Jersey. WDW maintains no bank accounts, owns no property, and has no assets here. Defendant avers that WDW neither owned nor operated Disney's Dixie Landings Resort and that WDW does not pay for the expenses of advertising initiated and controlled by licensees who have been granted permission to refer to the Walt Disney World Resort in the promotion of their goods and services.

The judge held that plaintiffs did not satisfy their burden of demonstrating contacts with the forum state sufficient to give the Court *in personam* jurisdiction. The judge ruled that the motion be denied without prejudice so that limited discovery on the relationship of WDW and Lake Buena Vista Communities, Inc. could be accomplished. However, counsel for plaintiffs stated that such discovery would not establish jurisdiction, because the issue would still remain whether either entity possessed sufficient contacts to establish jurisdiction. Instead, he requested discovery on the advertising efforts of defendant. The judge denied the request and granted the motion to dismiss for lack of personal jurisdiction.

On appeal, the judge's findings will not be disturbed unless "they are so wholly insupportable as to result in a denial of justice." *Rova Farms Resort, Inc. v. Investors Ins. Co.,* 65 *N.J.* 474, 484, 323 *A.*2d 495 (1974) (quoting *Greenfield v. Dusseault,* 60 *N.J.Super.* 436, 444, 159 *A.*2d 433 (App.Div.1960), *aff'd o.b.,* 33 *N.J.* 78, 161 *A.*2d 475 (1960)). We will not disturb "the factual findings and legal conclusions of the trial judge unless ... they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." *Ibid.* (quoting *Fagliarone v. Township of North Bergen,* 78 *N.J.Super.* 154, 155, 188 *A.*2d 43 (App.Div.1963)).

New Jersey's long-arm statute permits service on nonresident defendants subject only to "due process of law." *R.* 4:4–4(b)(1). Out-of-state service may be stretched to the "uttermost limits permitted by the United States Constitution." *Avdel Corp. v. Mecure,* 58 *N.J.* 264, 268, 277 *A.*2d 207 (1971).

There are two types of personal jurisdiction: specific and general. *Accura Zeisel Machinery Corp. v. Timco, Inc.,* 305 *N.J.Super.* 559, 565, 702 *A.*2d 1340 (App.Div.1997); *Giangola v. Walt Disney World Co.,* 753 *F.Supp.* 148, 154 (D.N.J.1990). Specific jurisdiction is established when a defendant's acts within the forum-state give rise to the cause of action. *Accura, supra,* 305 *N.J.Super.* at 565, 702 *A.*2d 1340; *Waste Management, Inc. v. Admiral Ins. Co.,* 138 *N.J.* 106, 119, 649 *A.*2d 379 (1994); *Lebel v. Everglades Marina, Inc.,* 115 *N.J.* 317, 322, 558 *A.*2d 1252 (1989). In contrast, when the defendant's presence in the state is unrelated to the subject matter of the lawsuit, general jurisdiction may be obtained based on the defendant's "continuous and substantial" contacts with the forum. *Accura, supra,* 305 *N.J.Super.* at 565, 702 *A.*2d 1340; *Waste Management, supra,* 138 *N.J.* at 119, 649 *A.*2d 379; *Lebel, supra,* 115 *N.J.* at 322, 558 *A.*2d 1252.

A review of the case law pertaining to specific jurisdiction is instructive for an application of general jurisdiction requirements. To satisfy due process, specific jurisdiction can be assert-

ed by the forum state only if the defendant has "minimal contacts" with the forum. *Hanson v. Denckla,* 357 *U.S.* 235, 251, 78 *S.Ct.* 1228, 1238, 2 *L.Ed.*2d 1283, 1296 (1958); *International Shoe v. Washington,* 326 *U.S.* 310, 66 *S.Ct.* 154, 90 *L.Ed.* 95 (1945); *Waste Management, supra,* 138 *N.J.* at 119–20, 649 *A.*2d 379; *Lebel, supra,* 115 *N.J.* at 322, 558 *A.*2d 1252. Under a specific jurisdiction analysis, the minimum contacts inquiry must focus on "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner,* 433 *U.S.* 186, 204, 97 *S.Ct.* 2569, 2579, 53 *L.Ed.*2d 683, 698 (1977). The minimal contacts that are sufficient to establish specific jurisdiction consist of "purposeful acts by that party, directed toward a state, which make it reasonable for the defendant to anticipate being haled into court there." *Giangola, supra,* 753 *F.Supp.* at 148 (D.N.J.1990) (citing *Wide–World Volkswagen Corp. v. Woodson,* 444 *U.S.* 286, 297, 100 *S.Ct.* 559, 567, 62 *L.Ed.*2d 490 (1980)). Unilateral actions of "those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum State." *Hanson, supra,* 357 *U.S.* at 253, 78 *S.Ct.* at 1239–40, 2 *L.Ed.*2d at 1298. Thus, the defendant must have purposely availed itself "of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Ibid.* These requirements ensure that a defendant has a "fair warning that a particular activity may subject him to the jurisdiction of a foreign sovereign." *Burger King Corp. v. Rudzewicz,* 471 *U.S.* 462, 472, 105 *S.Ct.* 2174, 2182, 85 *L.Ed.*2d 528, 540 (1985) (quoting *Shaffer v. Heitner,* 433 *U.S.* 186, 218, 97 *S.Ct.* 2569, 2587, 53 *L.Ed.*2d 683, 706 (1977) (Stevens, J. concurring)).

"The plaintiff seeking to overcome the challenge to general jurisdiction must show substantially more than mere minimum contacts to establish this form of personal jurisdiction." *Giangola, supra,* 753 *F.Supp.* at 154. Requiring that the non-resident's contacts be continuous and substantial "ensures the fairness of treating a non-resident identically to a resident in terms of amenability to suit in the jurisdiction." *Ibid.*

 When a defendant asserts lack of personal jurisdiction, "the plaintiff bears the burden of demonstrating that the defendant's contacts with the forum state are sufficient to confer personal jurisdiction on the court." *Ibid.* The plaintiff must establish defendant's contacts with the jurisdiction through the use of "sworn affidavits, certifications, or testimony." *Catalano v. Lease & Rental Management Corp.*, 252 *N.J.Super.* 545, 547–48, 600 *A.*2d 184 (Law Div.1991) (citing *Stranahan Gear Co. v. N.L. Indus., Inc.*, 800 *F.*2d 53 (3d Cir.1986); *Nelson by Carson v. Park Indus. Inc.*, 717 *F.*2d 1120 (7th Cir.1983), *cert. denied*, 465 *U.S.* 1024, 104 *S.Ct.* 1277, 79 *L.Ed.*2d 682 (1984); *American Telephone & Telegraph Co. v. MCI Communications Corp.*, 736 *F.Supp.* 1294 (D.N.J.1990)). In the early stages of a proceeding "where the factual record consists of only pleadings and affidavits, plaintiff's burden is satisfied by establishing a *prima facie* case of jurisdiction." *Cresswell v. Walt Disney Prod.*, 677 *F.Supp.* 284, 286 (M.D.Pa.1987).

Affidavits in support of motions must be limited to the affiant's personal knowledge as to facts which the affidavit is. competent to testify to and are admissible in evidence. Pressler, *Current N.J. Court Rules*, Comment to *R.* 1:6–6 (1998). The requirements of the rule are also not met "by affidavits containing argument, other forms of hearsay and general factual or legal conclusions." *Ibid.*

 *Rule* 1:6–6 provides:

If a motion is based on facts not appearing of record or not judicially noticeable, the court may hear it on affidavits made on personal knowledge, setting forth only facts which are admissible in evidence to which the affiant is competent to testify and which may have annexed thereto certified copies of all papers or parts thereof referred to therein. The court may direct the affiant to submit to cross-examination, or hear the matter wholly or partly on oral testimony or depositions.

Because *Rule* 1:6–6 mandates that certifications be based on personal knowledge, factual assertions based merely upon "information and belief" are patently inadequate. *See Patrolman's Benevolent Ass'n v. Montclair*, 70 *N.J.* 130, 133–34, 358 *A.*2d 180 (1976).

Plaintiffs urge that WDW has sufficient minimum contacts with New Jersey, directly or through affiliated entities, based on advertising and solicitation in New Jersey, to be subject to jurisdiction. Specifically, plaintiffs assert that WDW had continuous and substantial contacts with New Jersey warranting the assertion of general jurisdiction. Plaintiff argues that Disney itself or through its affiliated companies:

1) advertises on New Jersey television and in New Jersey newspapers;

2) sells Walt Disney products and services in New Jersey;

3) broadcasts the Disney Channel in New Jersey; and

4) provides a toll free number for New Jersey residents to call to arrange a trip to Disney.

Defendant first challenges assertions made in plaintiffs' supporting certifications that WDW is the owner or parent company of affiliated companies, including the Disney Store, the Disney Channel, the Disney Travel Company, and Dixie Landings Resorts. Lena D. Hart, a secretary in plaintiffs' counsel's firm, certified that she spoke with managers of various Disney Stores who advised her that the Disney Store is owned directly by WDW. She also spoke with June Moriarty at WDW "Corporate Headquarters" who advised her that the Disney Store and the Disney Channel are subsidiaries of WDW. Finally, she certified that she spoke with a manager of Dixie Landings Resort and was advised that it was owned directly by WDW. This certification obviously relies substantially on hearsay and is disputed by defense certifications.

The record will not support a finding that the subsidiaries of Walt Disney Company that gave WDW publicity and solicited business for WDW are anything but completely independent of WDW. As a result, the publicity given by one subsidiary to the other is insufficient to establish jurisdiction. *Pfundstein v. Omnicom Group Inc.*, 285 *N.J.Super.* 245, 254, 666 *A*.2d 1013 (App.Div. 1995) (holding that jurisdiction could not be asserted over the parent merely because the subsidiary had placed advertisements for the parent's products in New Jersey).

Nonetheless, even if affiliated entities maintain the formalities of corporate separateness, the nature of the relationship between entities and the extent of affiliates' activities "within the forum are considerations bearing on the reasonableness of subjecting the foreign corporate defendant to jurisdiction." *Brunswick Corp. v. Suzuki Motor Co.*, 575 *F.Supp.* 1412, 1421 (E.D.Wis.1983). The "economic realities" of the situation are to be considered. *Id.* at 1422.

Plaintiffs allege through certifications that WDW maintains substantial contacts with New Jersey through its affiliates. She certified that her family saw advertisements for WDW on the Disney Channel. Additionally, Rochelle certified that she purchased the Disney video, "Aladdin," from the Disney Store in the Quakerbridge Mall in Mercer County. The "Aladdin" video included a postcard advertising a four-day, three-night package to Walt Disney World and provided a toll free telephone number for Disney's Travel Company, which she called and received a videotape advertising Walt Disney World's 25th anniversary.

In addition to these contacts, plaintiffs' counsel, Robert W. Rubinstein, also certified that an advertisement was posted on the bulletin board of the Essex County Court House soliciting employees and visitors to the courthouse to travel to Walt Disney World to celebrate the 25th Anniversary. A copy of this advertisement was not included in the record, and Carol S. Pacula, Assistant Secretary of WDW, certified that WDW did not and does not advertise or promote a vacation package in the Essex County Courthouse.

Rubinstein also certified that he visited the Disney Store in question and was handed an application for a Disney Credit Card commemorating the 25th Anniversary of Walt Disney World. He was also handed a pamphlet soliciting him to take a trip to Walt Disney World. Pacula certified that Rubinstein did not obtain the credit card application from WDW and that the application was not designed, printed or distributed by WDW. Pacula also certi-

fied that WDW does not issue the credit card or the membership applications.

Finally, Joseph R. Dougherty, an associate at plaintiffs' counsel's law firm, certifies that he "recollects" watching the Miss America pageant over the past two years and that the contestants were filmed in Walt Disney World, the Magic Kingdom and Disney's Epcot Center. His certification concludes that such footage acted as a nationally televised promotion for WDW. The videotape of this "promotion" was not produced in the record.

Even though WDW does not own and is a separate corporate entity from Disney Company's other subsidiaries, there is sufficient indication from plaintiffs' certifications that the promotion of WDW's business is so closely related to its fellow subsidiaries to warrant further inquiry through the use of a *Rule* 1:6–6 hearing. As plaintiffs' certifications indicate, the related subsidiaries regularly advertise and solicit business for WDW. The Disney subsidiaries, such as the Disney Store, have a continuing presence in New Jersey, and WDW undoubtedly benefits in the promotion of its own enterprise from such presence. The true economic reality may well be that WDW, through its fellow subsidiaries, maintains substantial contacts with New Jersey.

Additional discovery may establish by competent evidence the mechanics of the arrangement, the methods employed to insure that the New Jersey stores offer products and promotions that directly solicit business for the WDW enterprise, and the extent of WDW's financial benefits from the actions of its affiliates in New Jersey. Clearly, this avenue warrants further exploration, as it appears that WDW has substantial contacts with New Jersey through its fellow subsidiaries and derives financial benefit in that way. We expect that discovery may establish the actual methods used by the related subsidiaries of the Walt Disney parent corporation to further the enterprises of WDW, its sister subsidiary.

Regarding the contacts WDW has with New Jersey through national advertisements, several federal and state cases have

addressed the issue of whether jurisdiction can be asserted over WDW on the basis of such advertising.

Plaintiffs rely upon *Makopoulos v. Walt Disney World, Inc.,* 221 *N.J.Super.* 513, 535 *A.*2d 26 (App.Div.1987), for the proposition that advertisements which are directed at a particular geographic area can be used to establish jurisdiction. In *Makopoulos,* WDW's advertising in the tri-state area of New York, New Jersey and Connecticut was not directed specifically to residents of New Jersey. *Id.* at 516, 535 *A.*2d 26. Nevertheless, the court noted:

By its interstate advertising, defendant may be successfully enticing people to visit its Florida resort. That some harms would follow and would result in claims in their home states, sites to which the advertising was intended to reach, was not only to be anticipated, it was predictable.

Today's jurisdiction is necessarily a function of today's technology and economic practice. Just as modern distribution systems have led to expansion of product liability jurisdiction, so too the national media campaigns may well result in the expansion of personal jurisdiction over those who negligently perform services. It would seem that by its national campaign, defendant sought guests from New Jersey, it enticed them in New Jersey and, when it was effective, set the desired relationship in motion in New Jersey. Such acts may therefore be sufficient to permit jurisdiction. When the operator of a resort seeks to expand the market for its services to other states, it is not unreasonable to subject it to suit in one of those states when that service becomes the source of injury to the consumer.

Thus it may well be that advertising, and particularly television advertising, can create sufficient contacts to justify *in personam* jurisdiction.

[221 *N.J.Super.* at 517–18, 535 *A.*2d 26 (citations omitted).]

However, the court did not resolve the issue but instead, remanded the case for further discovery to determine the extent and nature of the solicitation and its success in drawing New Jersey residents to the Florida complex. *Id.* at 518, 535 *A.*2d 26. Thus, the court raised the possibility that national advertising, although directed towards a broader market, if effective in drawing New Jersey residents, could be sufficient to establish jurisdiction. *Ibid.*

Plaintiffs also rely upon *Cresswell v. Walt Disney Productions,* 677 *F.Supp.* 284 (M.D.Pa.1987), in which jurisdiction was found in Pennsylvania over Walt Disney Productions. Defendants had conducted various activities in Pennsylvania including:

advertising on Pennsylvania television stations and in Pennsylvania newspapers; sending representatives to Philadelphia to encourage Pennsylvania citizens to visit

Walt Disney World; conveying Honorary Disney World Citizenship on the Mayor of Philadelphia; selling Walt Disney Company products and services in Pennsylvania; broadcasting the Walt Disney Channel in Pennsylvania; providing a toll-free telephone number for Pennsylvania residents to call; and regularly visiting Keystone Junior College to recruit employees.

[677 *F.Supp.* at 285.]

The court held that defendant's continuous and substantial business activity in Pennsylvania was sufficient to support jurisdiction. *Id.* at 288. While *Cresswell* considered national advertising to be one factor in establishing jurisdiction, it did not resolve the issue of whether it could be the sole factor. *See also Accura, supra,* 305 *N.J.Super.* at 569, 702 *A.*2d 1340 (holding that a national advertising campaign was one of several factors which supported the assertion of jurisdiction over defendant).

In contrast, defendant cites several cases that resolved the issue in WDW's favor. In *Serbin v. Walt Disney World,* 159 *N.J.Super.* 88, 386 *A.*2d 1372 (App.Div.1978), *certif. denied,* 78 *N.J.* 337, 395 *A.*2d 206 (1978), plaintiffs alleged that they were illegally detained at Walt Disney World for allegedly passing a counterfeit $20 bill. *Id.* at 90, 386 *A.*2d 1372. The court held that WDW did not possess minimum contacts with the State of New Jersey. *Id.* at 93, 386 *A.*2d 1372. The court noted that WDW did not pay commission to a travel agency, was not qualified to do business in New Jersey, did not pay or incur liability for New Jersey taxes, did not have an agent for service of process, did not place local advertisements, did not have any New Jersey telephone listings, did not have any assets, an office or place of business in New Jersey, and did not employ anyone in New Jersey. *Id.* at 91, 386 *A.*2d 1372.

The court in *Giangola, supra,* 753 *F.Supp.* 148 (D.N.J.1990), addressed the issue of whether advertising can constitute minimum contacts sufficient to satisfy the requirements of due process. Plaintiff was injured while attending EPCOT Center, a facility owned and operated by defendant, WDW. *Id.* at 150. Plaintiff attempted to establish jurisdiction by relying on newspaper and television advertisements. *Id.* at 155. The court rejected national

advertisements as the sole basis for jurisdiction, since such advertising was intended to merely spread knowledge about defendant's facilities among the general public. *Id.* at 156. The court continued:

The facts in this case do not show any legal benefit or protection accruing from defendant's advertising campaign. In an age of modern advertising and national media publications and markets, plaintiffs' argument that such conduct would make a defendant amenable to suit wherever the advertisements were aired would substantially undermine the law of personal jurisdiction. Courts generally have refused to adopt such a standard and embark on such a course.

[753 *F.Supp.* at 156.]

The *Giangola* court recognized that in *Makopoulos* we had reached a different conclusion, but it rejected our view as not being in accord with United States Supreme Court precedents. *Id.* at 156. Defendant also cites several unpublished Law Division opinions that refused to grant jurisdiction over WDW on the basis of national advertisements.

 In any event, the record is unclear as to how extensive WDW's advertising was for Walt Disney World's 25th Anniversary celebration and to what extent the New Jersey area was targeted. As in *Makopoulos*, while the advertisements plaintiffs refer to were designed to attract people in general to Walt Disney World, the record does not reveal whether those advertisements were national in scope or were directed toward the tri-state market or New Jersey residents in particular. The District Court in *Giangola* cautioned that national media campaigns that inform the general public about a recreational facility should not form the basis for jurisdiction. *Giangola, supra*, 753 *F.Supp.* at 156. Media campaigns designed to solicit people from a specific geographic area, such that WDW can anticipate being summoned into the courts of that area, in our view may form the basis for jurisdiction. *Makopoulos, supra*, 221 *N.J.Super.* at 518, 535 *A.*2d 26. Our remand for jurisdictional discovery may include this subject.

 Plaintiffs also argue that specific jurisdiction has been established over WDW based upon Rochelle's telephone conversa-

tion with Theresa Forrest. The phone call is the source of Rochelle's claim for negligent infliction of emotional distress. According to plaintiffs' argument, Forrest committed a tort in New Jersey, which can form the basis of jurisdiction.

Personal jurisdiction may be asserted over a nonresident defendant who commits a tortious act in New Jersey. *Knight v. San Jacinto Club, Inc.*, 96 *N.J.Super.* 81, 90, 232 *A.*2d 462 (Law Div.1967). "[D]ue process is satisfied when a forum asserts jurisdiction over a defendant who undertakes affirmative acts which the defendant should reasonably foresee would lead to economic damages within the forum." *Covenant Bank for Savings v. Cohen*, 806 *F.Supp.* 52, 56 (D.N.J.1992) (citing *Calder v. Jones*, 465 *U.S.* 783, 104 *S.Ct.* 1482, 79 *L.Ed.*2d 804 (1984)). Jurisdiction may be asserted regardless of whether the tortious act is negligent or intentional. *Knight, supra*, 96 *N.J.Super.* at 90, 232 *A.*2d 462. However, the act or, in this case the communication, must represent a deliberate and purposeful contact with New Jersey. *Covenant, supra*, 806 *F.Supp.* at 56. Thus, a communication by a defendant that is solicited or initiated by a plaintiff cannot form the basis for jurisdiction. *Ibid.*

Arguably, it is reasonably foreseeable that informing a parent that her child slept in human blood but refusing to notify the parent whether the blood was contaminated would result in the infliction of emotional distress and cause an injury in the forum. However, defendant argues that Rochelle initiated the phone call, and as a result, jurisdiction cannot be established based on her unilateral actions. *See Hanson, supra*, 357 *U.S.* at 253, 78 *S.Ct.* at 1239–40, 2 *L.Ed.*2d at 1298; *Covenant, supra*, 806 *F.Supp.* at 56. In effect, defendant is arguing that Forrest's communication was solicited by Rochelle, and as a result, the phone call was not aimed at the forum but merely at a plaintiff who is located in the forum. *See Narco Avionics, Inc. v. Sportsman's Market, Inc.* 792 *F.Supp.* 398, 408 (E.D.Pa.1992).

In contrast to defendant's view of events, the record could support a finding that Rochelle did not initiate the communications

that led to the allegedly tortious phone call. It is alleged that the evening hotel manager told Rochelle that a copy of the laboratory report would be sent to her. Upon returning to New Jersey, Rochelle received what may be found to be an unsolicited phone call from Forrest, who represented that she was from Walt Disney World, that the sheets and pillow case were sent to a laboratory, and that once the results were received, they would contact Rochelle. Only when Rochelle did not receive the laboratory report as promised did she contact Forrest.

If Forrest purposely directed her conduct toward New Jersey by initiating the communications with Rochelle that led to the allegedly tortious phone call, the phone contacts may form the basis for specific jurisdiction. Our remand for jurisdictional discovery may include the subject of whether Forrest was truly a representative of defendant and the circumstances surrounding the phone calls.

If the trial court finds specific jurisdiction, such jurisdiction may apply only to the negligent infliction of emotional distress count. *Far West Capital, Inc. v. Towne,* 828 *F.Supp.* 909 (D.Utah 1993) (noting that where defendant has only minimum contacts with the forum, personal jurisdiction may be asserted only on claims arising out of the defendants' forum-state authority); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 *U.S.* 408, 418, 104 *S.Ct.* 1868, 1874, 80 *L.Ed.*2d 404 (1984) (holding that mere purchases are not sufficient to support assertion of *in personam* jurisdiction over a non-resident corporation in an action not related to those purchases).

We reverse the dismissal of plaintiffs' complaint and remand for discovery in accordance with the within opinion.