**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1007-19T2

MAXIMUM QUALITY
FOODS, INC.,

     Plaintiff-Appellant,

v.

PANKOS DINER CORP.
d/b/a EMPRESS DINER and
JERRY M. PANAGATOS,

     Defendants-Respondents.

_____

Submitted October 1, 2020 – Decided   October 20, 2020

Before Judges Whipple and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-0553-19.

Saldutti Law Group, attorneys for appellant (Andrew P. Chigounis, on the briefs).

Jacobs, Schwalbe & Petruzzelli, PC, attorneys for respondents (John Morelli, on the brief).

PER CURIAM

In this collection case, plaintiff Maximum Quality Foods, Inc. (plaintiff) appeals from an October 2, 2019 order granting summary judgment and dismissing its complaint for lack of personal jurisdiction over defendants Pankos Diner Corp. (Pankos) D/B/A Empress Diner and Jerry M. Panagatos (Panagatos). For the reasons that follow, we affirm.

I.

We discern the following facts from the summary judgment record and view them in the light most favorable to the non-moving party. See Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995). Plaintiff is a New Jersey corporation having a principal place of business in Linden that delivers food products. According to plaintiff's website, it serves the New Jersey, New York, Long Island, Pennsylvania, Delaware, New England, and other areas.

Panagatos is a 37.5% shareholder and the president of Pankos, a New York corporation, which is not authorized to conduct business in New Jersey. The other shareholders are Panagatos's brother and mother. Pankos formerly operated the Empress Diner at 2490 Hempstead Turnpike in East Meadow, New York, which closed on May 5, 2018. Panagatos resides in Melville, New York and has never resided in New Jersey. He has not traveled to New Jersey in the past five years except when passing through to another location.

A-1007-19T2

Plaintiff and Empress entered into an agreement to purchase food products from plaintiff. Defendants did not travel to New Jersey to execute any contracts. When plaintiff delivered food products to the Empress Diner, orders were signed for by the chef, Chris Kokinilas. Panagatos never personally signed for any orders. The record shows that plaintiff's sales personnel traveled to East Meadow to take defendants' orders. The parties' business relationship continued for a number of years. According to Panagatos, he observed corporate formalities and conducted business through the Pankos corporate name. He never represented he would assume personal liability for Pankos's corporate debt.

On February 12, 2019, plaintiff filed a complaint in the Camden County[1] Law Division alleging breach of contract, breach of fiduciary duty/quasi-trust relationship, alter-ego/piercing the corporate veil, unjust enrichment, and promissory estoppel. Plaintiff sought $40,029.64 in monetary damages plus $10,007.41 in counsel fees. Defendants defaulted, and on April 12, 2019, filed a motion to vacate default and permit filing of an answer and separate defenses, including lack of personal jurisdiction over defendants. The judge vacated the

_____

[1] The record does not support plaintiff asserting venue in Camden County since its principal place of business is in Linden, which is located in Union County. However, that issue is not raised on appeal and is not germane to our decision.

A-1007-19T2

default and permitted defendants to file an answer and separate defenses. Before ruling on the issue of jurisdiction, the judge ordered the parties to conduct discovery.

On May 29, 2019, defendants filed an answer and separate defenses. Thereafter, on June 17, 2019, plaintiff moved for partial summary judgment against Pankos only. On July 18, 2019, defendants filed opposition to plaintiff's motion and a cross-motion to dismiss the complaint. Defendants argued that because Pankos is a New York corporation not authorized to conduct business in the State of New Jersey, Panagatos is a New York resident with no ties to this State, and all food orders and deliveries occurred at the Empress Diner in East Meadow, there was no basis to find personal jurisdiction in New Jersey.

On September 27, 2019, the Law Division judge heard oral argument and placed her decision on the record. The judge denied plaintiff's motion, granted defendants' cross-motion, and dismissed the complaint for lack of personal jurisdiction over defendants. In her decision, the judge found exercising jurisdiction over defendants would offend "the traditional notions of fair play and substantial justice." The judge stated:

> In determining whether a non-resident defendant is subject to our jurisdiction, it requires a two-prong analysis: [f]irst, an examination of the notice of the contacts defendant has had with the jurisdiction; and

4

then a consideration whether the exercise of jurisdiction comports with fair play and substantial justice: that is, whether the exercise of jurisdiction would be reasonable in the overall context of the matter. Based upon the facts of this case, I can't come to that conclusion.

In addition, the judge reasoned that jurisdiction lies in New York "where [p]laintiff went to every week and took an order." The judge further found defendants never placed orders in New Jersey and concluded "defendant[s]' contacts with the State of New Jersey are insufficient to invoke . . . personal jurisdiction." A memorializing order was entered on October 2, 2019.[2]

## II.

On appeal, plaintiff argues the judge erred by granting defendants' motion for summary judgment and dismissing its complaint. Plaintiff contends defendants have established "minimum contacts" with the State of New Jersey because defendants knowingly placed weekly orders for food deliveries with a New Jersey company over the course of many years. Further, plaintiff asserts that New Jersey courts maintain personal jurisdiction over defendants because they knew plaintiff had its warehouse and offices situated in New Jersey,

---

[2] The judge denied plaintiff's additional claims as moot.

A-1007-19T2

requested that products be transported to New York on New Jersey vehicles, and defendants sent payment to New Jersey.

"An appellate court reviews an order granting summary judgment in accordance with the same standard as the motion judge." New Jersey Transit Corp. v. Certain Underwriters at Lloyd's London, 461 N.J. Super. 440, 452 (App. Div. 2019) (quoting Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)). Rule 4:46-2(c) provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."

"If there exists a single, unavoidable resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a 'genuine' issue of material fact for purposes of Rule 4:46-2." Brill, 142 N.J. at 540 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)). The court "should not hesitate to grant summary judgment" if "the evidence 'is so one-sided that one party must prevail as a matter of law.'" Ibid. (quoting Liberty Lobby, 477 U.S. at 252).

We review the trial court's grant of summary judgment de novo under the same standard as the trial court. Templo Fuente De Vida Corp. v. Nat'l Union

Fire Ins. Co., 224 N.J. 189, 199 (2016).  Where there is no issue of material fact and only a question of law remains, we give "no special deference to the legal determinations of the trial court."  Ibid. (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

It has long been recognized that our state courts may exercise jurisdiction over a non-resident defendant "to the uttermost limits permitted by the United States Constitution."  Avdel Corp. v. Mecure, 58 N.J. 264, 268 (1971); Nicastro v. McIntyre Mach. Am., Ltd., 201 N.J. 48, 72 (2010); see also R. 4:4-4.

In the progression of personal jurisdiction cases decided by the United States Supreme Court under the federal due process clause, two cardinal principles have consistently applied, dating back to at least 1945 when the Court decided International Shoe Co. v. Washington, 326 U.S. 310 (1945).  First, "due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it[.]"  Id. at 316.  Second, the minimum contacts must be of a nature and extent "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  Ibid. (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)); see also Hanson v. Denckla, 357 U.S. 235 (1958); McGee v. Int'l Life Ins. Co., 355 U.S. 220 (1957).

A-1007-19T2

In the matter under review, plaintiff invokes a "specific" jurisdictional nexus arising out of the subject matter rather than asserting that New Jersey has "general" jurisdiction over defendants by virtue of any "'continuous and substantial' contacts with the forum." Jacobs v. Walt Disney World Co., 309 N.J. Super. 443, 452 (App. Div. 1998) (quoting Accura Zeisel Mach. Corp. v. Timico, Inc., 305 N.J. Super. 559, 565 (App. Div. 1997)).

A "'minimum contacts inquiry must focus on the relationship among the defendant, the forum, and the litigation.'" Bayway Ref. Co. v. State Utils., Inc., 333 N.J. Super. 420, 429 (App. Div. 2000) (quoting Lebel v. Everglades Marina, Inc., 115 N.J. 317, 323 (1989)). "In determining whether the defendant's contacts are purposeful, a court must examine the defendant's 'conduct and connection' with the forum state and determine whether the defendant should 'reasonably anticipate being hauled into court [in the forum state].'" Ibid. (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

Additionally, "the existence of minimum contacts turns on the presence or absence of intentional acts of the defendant to avail itself of some benefit of a forum state." Waste Mgmt., Inc. v. Admiral Ins. Co, 138 N.J. 106, 126 (1994). The presence or absence of personal jurisdiction must be determined "on a case-

by-case basis." Bayway Ref. Co., 333 N.J. Super. at 429.  This analysis requires a judicial examination of several elements in an effort to satisfy the notions of "fair play and substantial justice." Lebel, 115 N.J. at 328.  Specifically, the court must consider:

> the burden on the defendant, the interests of the forum [s]tate, and the plaintiff's interest in obtaining relief.  It must also weigh in its determination "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several [s]tates in furthering fundamental substantive social policies."
>
> [Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal., 480 U.S. 102, 113 (1987) (quoting World-Wide Volkswagen, 444 U.S. at 292).]

Measured against the standard of minimum contacts, the record is adequate to support the judge's finding that New Jersey cannot assert personal jurisdiction over these defendants.  We consider persuasive plaintiff's representative traveled to East Meadow to place orders and deliver food products.  The record and deposition testimony clearly confirm these facts, and plaintiff offered no evidence to the contrary.  Defendants' only contact with New Jersey was entering into a contract with plaintiff.  This contact is inadequate to satisfy "traditional notions of fair play and substantial justice." Int'l Shoe Co., 326 U.S. at 316.

A-1007-19T2

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION